NATIONAL BANK OF COMMERCE, a Banking Corporation, Plaintiff-in-Error,

v.

The FIRST NATIONAL BANK AND TRUST COMPANY OF TULSA, a National Banking Association, Defendant-in-Error.

No. 41698.

Supreme Court of Oklahoma.

Oct. 22, 1968.

Smith & Townsend by Bruce Townsend, Tulsa, for plaintiff in error.

Gable, Gotwals, Hays, Rubin & Fox, Arthur E. Rubin, Tulsa, for defendant in error.

HODGES, Justice.

This appeal presents a question as to priority of liens upon a 1964 model Studebaker Avanti automobile, as between two Tulsa banks, each of which claimed to own the superior security interest.

In the trial court, plaintiff National Bank of Commerce filed an action in replevin against certain defendants preparatory to the foreclosure of its lien on the automobile. First National Bank and Trust Company filed a petition in intervention in which it claimed a superior interest. The trial court found that the claims of both banks were superior to the claims of all defendants, and further found that the claim of the First National Bank and Trust Company was superior to that of the National Bank of Commerce, and rendered judgment accordingly. National Bank of Commerce then appealed to this court. For clarity and brevity hereinafter, we will refer to plaintiff, National Bank of Commerce, as NBC, and to intervenor (defendant in error), First National Bank and Trust Company, as FNB. The trial court defendants are not involved in this appeal.

NBC claims priority under a "Financing Statement and Security Agreement" (chattel mortgage) executed by Bill Leigh, dated October 30, 1964, and recorded in the office of the County Clerk of Tulsa County on the same day. This instrument recites that the automobile is to be used primarily for personal, family or household purposes.

FNB claims priority under a similar instrument executed by Fred Case on October 15, 1964, and recorded on October 20, 1964 in the office of the County Clerk of Oklahoma County. This instrument recites that the automobile is to be used primarily *for business purposes*. It was also later recorded in the office of the County Clerk of Tulsa County on December 28, 1964 (after this action was begun in the trial court).

It appears from a stipulation in the record that by agreement between the two banks, the automobile was sold and the proceeds are being held pending the outcome of this appeal.

Several sections of 12A O.S.1961, the Uniform Commercial Code, are involved in this case.

§ 1–201(9) defines the phrase "Buyer in ordinary course of business" as a person "who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind * * *".

§ 9–307 provides that a buyer in ordinary course of business takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence (with certain exceptions not applicable here).

§ 9–312(4) provides that a purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter.

§ 9–401 provides in pertinent part that the proper place to file a financing statement in order to perfect a security interest in collateral which is consumer goods is in the office of the county clerk in the county of the debtor's residence; and (with other provisions not applicable here) if the collateral is not consumer goods, the proper place of filing is the office of the county clerk of Oklahoma County.

Both debtors involved in this case (Fred Case and Bill Leigh) were residents of Tulsa County.

§ 9–109 provides in pertinent part that goods are "consumer goods" if they are used or bought for use primarily for personal, family or household purposes; that they are "equipment" if they are used or bought for use primarily in business; and that they are "inventory" if they are held by a person who holds them for sale. In the Uniform Commercial Code comments following § 9–109, it is said of "inventory" that "Implicit in the definition is the cri-

terion that the prospective sale is in the ordinary course of business". Under this section, the terms defined are mutually exclusive—that is, goods may belong to only one class at a given time. Also, "equipment" is a sort of residuary classification, in that goods that are not included in the definitions of inventory, farm products or consumer goods are classified as "equipment".

It is agreed that the primary issue in this case is the classification of the Avanti as equipment, consumer goods or inventory, to determine the proper place of filing. If it was equipment, then FNB perfected its security interest by properly filing in Oklahoma County on October 20th. If it was consumer goods, FNB filed in the wrong county on October 20th, and its interest is inferior to the NBC security interest which was perfected by the filing in Tulsa County on October 30th. If it was inventory, even though the FNB financing statement was properly filed in Oklahoma County on October 20th, still the NBC interest is superior if Bill Leigh was a buyer in the ordinary course of business, under § 9–307. A secondary question is whether or not Fred Case (who sold the Avanti to Bill Leigh) was an automobile dealer at the time of the sale. At that time, Case had applied for, but had not received, a dealership agreement from Studebaker Corp. With these questions in mind we now examine the evidence, much of which was substantially uncontradicted.

Fred Case had operated an automobile repair business since 1958 at 3020 East Admiral Place in Tulsa, as Fred Case Auto Service, doing repair work on all kinds of automobiles. His wife, Mary, ran the office and took care of the paper work. During that time, the only automobile Case had sold was a 1951 model Dodge "that the boy couldn't make the payments on, on the repair bill". On October 5, 1964, Case had in his shop a wrecked Avanti which he was repairing, which had formerly belonged to Bill Leigh. On that day Leigh came into the shop and offered to pay them one hundred dollars and expenses if they would find him a new Avanti. After several long distance calls, they found a new Avanti at the Bevan Motor Company in Hutchinson, Kansas. On Saturday, October 9th, Leigh flew Mr. and Mrs. Case to Hutchinson in an airplane. They went to the Bevan Motor Company where Leigh offered his personal check to Bevan for the Avanti. Bevan refused to accept the check from Leigh, so Mrs. Case wrote Bevan a check signed "Fred Case Auto Service by Mary L. Case" although Leigh had told them he would pay for the new car with cash. The three then returned to Tulsa, Leigh in the airplane and the Cases in the Avanti, and that night Leigh wrote Case his check for the purchase price plus one hundred dollars and received possession of the Avanti.

Thereafter the Leigh check to Case was returned because Leigh's bank account was insufficient, and on October 15th Case repossessed the automobile, apparently with Leigh's consent. He then borrowed money from FNB with which to cover his check to the Bevan Motor Company and at that time signed the financing statement and security statement under which FNB claims priority in this case. At this time Mr. and Mrs. Case already had two family cars, and Mrs. Case testified that they decided to use the Avanti in their business, as a company car.

On October 19th Bill Leigh came back into the Case place of business with $1150.00 in cash and told the Cases he had arranged for NBC to lend him the balance of the money with which to buy the Avanti. Mrs. Case then called NBC and talked with Mr. Foster and told him that FNB had a mortgage which would have to be paid before the car could be released. Mr. Foster, who had known Bill Leigh, told her he would write a cashier's check made out to Bill Leigh and Mr. and Mrs. Case.

Leigh took possession of the Avanti and later went to the bank with the manufacturer's certificate of origin. When he got there Mr. Foster was gone, and the transaction was handled by Mr. Husted, another

NBC official. Foster, the executive vice president, had left word with Husted that he had committed the loan, but did not tell him to make a cashier's check payable to Mr. and Mrs. Case and Bill Leigh. After Leigh signed the financing statement and security agreement under which NBC claims, Husted gave him a deposit slip showing the money credited to Leigh in the bank. Leigh later drew the money out and, without paying the Cases, apparently absconded. From the remarks of the attorneys at the time of trial of this action, Leigh was "up on the ninth floor" awaiting trial on a criminal charge unrelated to these transactions. After three or four days, when the Cases did not receive their money, they checked with Mr. Husted at NBC and learned that the money had been deposited to Leigh's credit and withdrawn by him.

Mrs. Case's testimony that she told Mr. Foster about the prior lien of FNB was directly contradicted by Mr. Foster. The testimony of Mr. Foster and Mr. Husted that Mrs. Case told them that "they were Studebaker dealers" was directly contradicted by Mrs. Case, who said she told Foster that they had applied for, but had not received, a Studebaker dealership. By the trial court's general finding for FNB, these conflicts were necessarily resolved in favor of the testimony of its witness, Mrs. Case.

The argument in the brief of plaintiff in error, NBC, consists principally of a discussion of the weight of the evidence. It is argued first that the court erred in not finding that the Cases were "de facto automobile dealers" at the time of their sale to Bill Leigh on October 19th. On this point the record shows that Case applied for a Studebaker franchise on February 15, 1964. He was required to prove his ability to "floor plan" the automobiles, and did so after making arrangements with FNB on June 16, 1964. On November 9th, he signed a "Dealer Sales Agreement" with the Studebaker Corporation and on the same day changed the name of his business from "Fred Case Auto Service" to "Fred Case Motor Company". On November 19th, he moved from the location at 3020 East Admiral Place, where the repair business had been operated, into new quarters at 8544 East Admiral Place. On November 24th, he was notified of his right to give warranty service on Studebakers, and the next day he received his first new Studebaker from the factory. On December 31st, he received his new car dealer's license and his used car dealer's license from the State of Oklahoma. He had never had either kind of license before. The only car he had ever sold in his business before the October, 1964, transactions with Bill Leigh was the old 1951 model Dodge which was sold for a repair bill, and the first automobile was sold under the dealership agreement on February 2, 1965.

The above evidence is substantially uncontradicted. We hold that the trial court's implied finding that Case was not an auto dealer in October, 1964, is not clearly against the weight of the evidence.

In three propositions, NBC argues that the court erred in classifying the Avanti as equipment, and not as consumer goods or inventory, under § 9–109. In this connection, the only direct evidence as to the use to which the Avanti would be put after the Cases re-possessed it from Leigh on October 15th was the testimony of Mrs. Case that they already had two family cars, and planned to use the Avanti as a company car in their business. This puts the Avanti squarely within the definition of "equipment" found in § 9–109. NBC argues with some force that it is unreasonable and illogical to suppose that a man engaged in an automobile repair business would buy a "very fancy Studebaker", an "unusual type of car", such as the Avanti, for use as a company car. This argument would bear more weight if the record showed that the Cases voluntarily and intentionally acquired the Avanti, but such is not the case. They originally intended only to earn a "finder's fee" by locating the Avanti in Hutchinson, Kansas, for Leigh to purchase from the

282

Bevan Motor Co. Their subsequent repossession of the Avanti from Leigh was a matter of self-protection, and since they already had two family automobiles, their decision to use the Avanti as a company car may be characterized as making the best of a bad bargain. Their re-sale of the Avanti to Leigh on October 19th furnishes no basis for classifying the Avanti as "inventory", since implicit in the definition of "inventory" found in § 9–109 is the criterion that the prospective sale is in the ordinary course of business. The October 19th sale was not in the ordinary course of business because on that day Case was not a Studebaker dealer, did not have either a new car dealer's license or a used car dealer's license, and had never before sold a Studebaker, new or used, in his business. He was therefore not " * * * a person in the business of selling goods of that kind * * *" as required by § 1–201(9) in order to qualify a purchaser from him as a buyer in the ordinary course of business.

Since the Avanti was properly classified as "equipment" under § 9–109, the FNB financing statement was properly filed in Oklahoma County under § 9–401, and became a perfected purchase money security interest. Also, because Leigh was not a buyer in the ordinary course of business under § 1–201(9), in the October 19th sale from Case to Leigh, NBC cannot claim priority for its lien under § 9–307. Since the FNB lien is based upon a perfected purchase money security interest upon collateral other than inventory, it has priority both from the standpoint of filing time and under § 9–312(4).

In an action of equitable cognizance the Supreme Court will examine the entire record and weigh the evidence but will not reverse the trial court unless the judgment is clearly against the weight of the evidence. Martin v. Bastion, Okl., 424 P.2d 1.

After a careful review of the record before us, we cannot say that the judgment of the trial court is clearly against the weight of the evidence.

The judgment is therefore affirmed.

All Justices concur.