J. Irwin Shapiro, J.
These motions, one by plaintiff for summary judgment and the cross motion by defendant for like relief, present essentially pure questions of law since both parties are in agreement upon the basic facts.
On December 16, 1965 plaintiff, a New Jersey corporation, entered into a “ sale and security agreement ” which provided for the sale of a traxcavator to Sallustro & Raffa Contractors, Inc., also a New Jersey corporation, and on December 29, 1966 plaintiff filed a financing statement with regard to that sale in New Jersey.
Thereafter plaintiff permitted Sallustro & Raffa to transfer the traxcavator to another New Jersey corporation, S & R Landscaping and Paving Contractors, Inc. (hereinafter S & R). In connection with that transfer plaintiff entered into a second “ sale and security agreement ”, this time with S & R, and on October 4, 1967 in connection with that sale plaintiff filed a second financing statement in New Jersey.
*779 On October 3, 1967 S & R, as subcontractor, entered into an agreement with defendant, a New York corporation, which was general contractor on a project which involved the construction of a New York City correctional institution for women on Riker’s Island. Paragraph 34 of the subcontract agreement between the defendant and S & R provided: “ If this subcontract is terminated by the Contractor pursuant to the provisions, hereof, all materials at the site shall belong to the Contractor and all plant, tools and equipment of the Subcontractor shall remain upon the premises, and the Contractor shall have the right to use the same without expense to the Contractor but after the General Contract work has been fully completed and accepted by the Owner, the Subcontractor may remove such of the plant, tools and equipment as still remain, but the Contractor shall not be liable for anything that has been lost, worn out or destroyed.”
On October 27,1967 S & R filed a petition for an arrangement under chapter 11 of the Bankruptcy Act and on December 27, 1967 plaintiff secured an order from the United States District Court of New Jersey which adjudged plaintiff a lienor as a secured party with regard to the traxcavator and which also ordered the receiver of S & R to return the traxcavator to the plaintiff by January 1,1968. It appears that on January 8, 1968 plaintiff demanded that defendant return the traxcavator which was in defendant’s possession and that defendant refused this request, whereupon plaintiff replevied the traxcavator on or about February 6, 1968. In this action plaintiff seeks a judgment that it is the owner and entitled to the immediate possession of the traxcavator and that the traxcavator should be delivered to the plaintiff, and it also seeks damages in the sum of $5,000 with interest for the wrongful detention by defendant of the traxcavator together with a further sum for damages the plaintiff shall sustain from the date of the complaint to the date upon which it obtains possession of the traxcavator.
The question presented to the court is simply: Which party has the superior right to the traxcavator.
In support of its contention that it has the primary interest in the traxcavator, defendant contends that paragraph 34 of the agreement between defendant and S & R created a “ security interest” within the meaning of subdivision (37) of section 1-201 of the Uniform Commercial Code and that when S & R defaulted in the performance of its work on December 27, 1967 and defendant on that date took possession of the traxcavator, its interest was perfected pursuant to the provisions of section 9-305 of the Uniform Commercial Code.
*780 Defendant further contends, and this is the .real crux of the argument, that plaintiff’s interest which originally attached by the New Jersey filings is unperfected because this transaction is governed by subdivision (3) of section 9-103 of the Uniform Commercial Code which provides: “ If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this state and it was brought into this state within 30 days after the security interest attached for purposes other than transportation through this state, then the validity of the security interest in this state is to be determined by the law of this state. If the security interest was already perf ected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four month period; in such case perfection dates from the time of perfection in this state.” (Emphasis supplied.)
Defendant contends that, pursuant to this section, since plaintiff’s security interest in the traxcavator was perfected in New Jersey by filing and the traxcavator was thereafter brought into New York, the security interest created in New Jersey continued only for four months and, since it was never reperfected in this State after the expiration of the four-month period, the perfected New Jersey security interest expired. Defendant therefore contends that its interest in the traxcavator is superior to that of the plaintiff.
Whether a particular document or transaction creates a “security interest” basically depends upon the intent of the parties for as the Uniform Commercial Code Comment to section 9-102 points out: ‘ ‘ except for sales of accounts, contract rights and chattel paper, the principal test whether a transaction comes under this Article is: is the transaction intended to have effect as security f ” (Emphasis supplied.)
Plaintiff contends that paragraph 34 of the contract between defendant and S & R, to which it was not a party, simply sets forth a contractual measure of damages and evidences no intent to create a “security interest”. The language of that para *781 graph is sufficiently ambiguous to create a question of fact as to whether the parties intended thereby to create a “ security interest ”. It should also be noted that one of the requirements for the creation of a “ security interest ” is that the equipment subject to that security interest be sufficiently described in the security agreement. (Uniform Commercial Code, § 9-110.) There is a serious question whether paragraph 34 of the contract meets that requirement. However, it is unnecessary for the court to resolve either of those questions because assuming, without deciding, that paragraph 34 created a valid security interest which was perfected on December 27, 1967 by defendant’s act of taking the traxcavator into its possession, that interest is, in any event, inferior to plaintiff’s interest for this transaction is not governed by subdivision (3) but rather by subdivision (2) of section 9-103 of the code, which provides: ‘ ‘ If the chief place of business of a debtor is in this state, this Article governs the validity and perfection of a security interest and the possibility and effect of proper filing with regard to general intangibles or with regard to goods of a type which are normally used in more than one jurisdiction (such as automotive equipment, rolling stock, airplanes, road building equipment, commercial harvesting equipment, construction machinery and the like) if such goods are classified as equipment or classified as inventory by reason of their being leased by the debtor to others. Otherwise, the law (including the conflict of laws rules) of the jurisdiction where such chief place of business is located shall govern. If the chief place of business is located in a jurisdiction which does not provide for perfection of the security interest by filing or recording in that jurisdiction, then the security interest may be perfected by filing in this state.”
The test set forth in subdivision (2) is that it is to apply to goods “ of a type which are normally used in more than one jurisdiction ’ ’ and the section gives as illustrations road building equipment, construction machinery and other similar types of machines. It is manifest that this subdivision applies to a traxcavator, which is a piece of heavy construction machinery. Both the official comment of the Uniform Commercial Code and the leading commentators agree that subdivision (2), rather than subdivision (3), applies to mobile equipment. Paragraph 3 of the Uniform Commercial Code Comment to section 9-103 provides: ‘ ‘ Another class of collateral for which a special rule is stated (subsection (2)) is mobile goods which are normally moved for use from one jurisdiction to another. Such goods are generally classified as equipment; occasionally they may be classified as inventory, for example, autos owned by a car rental *782 agency. Under many present chattel mortgage and conditional sales acts the mortgagee or conditional vendor must file in each filing district in which such mobile equipment is used — which is possible although onerous in some cases, but not even possible in the case, for example, of non-scheduled trucking operations. Subsection (2) provides that a security interest in such equipment or inventory is subject to this Article when the debtor’s chief place of business is in this state. ‘ Chief place of business ’ does not mean the place of incorporation; it means the place from which in fact the debtor manages the main part of his business operations. That is the place where persons dealing with the debtor would normally look for credit information, and is the appropriate place for filing. The term ‘ chief place of business ’ is not defined in this Section or elsewhere in this Act. ’ ’ Similarly, in 2 Anderson, Uniform Commercial Code, section 9-103:5, the author states:
“ The law of the chief place of business of the debtor governs a security interest in mobile equipment (that is, tangible personal property which does not acquire a fixed situs because normally used in more than one jurisdiction — for example, automobiles and trains • — whether such goods be classified as equipment or classified as inventory by reason of their being leased to others). It is the nature of the goods which determines the applicability of this provision of the Code, rather than the extent of their use outside the jurisdiction.
‘ ‘ If the chief place of business of the debtor is in the Code state, the Code’s provisions govern the validity and perfection of a security interest and the possibility and effect of proper filing.
‘ ‘ If the chief business office is located in another state, the law of that state, including its conflict of laws, rules, governs the transaction. In the event that the law of the foreign chief place of business state does not provide for perfection of the security interest by filing or recording in that jurisdiction, the security interest may be perfected by filing in the Code state.” (See, also, 1 Coogan-Hogan-Vagts. Secured Transactions Under the UCC, § 5-07 [1] [d], pp. 397-398.)
Having determined that subdivision (2) of section 9-103 governs, and since both parties admit that the chief place of business of the debtor is New Jersey, the rights of the parties are governed by New Jersey law. Subdivision (2) of section 9-103 of the New Jersey version of the Uniform Commercial Code provides that if the chief place of business of a debtor is in New Jersey the law of New Jersey governs the validity and perfection of the security interest and the possibility and effect *783 of proper filing with regard to goods of the type which are normally used in more than one jurisdiction. Therefore, the New Jersey conflicts of law rule which is applicable is to be found in the local law of the New Jersey Uniform Commercial Code (N. J. Stat., tit. 12A). Subdivision (c) of section 9-401 of that code provides that the proper filing place in order to perfect a security interest, under the circumstances of a case such as ours, is the office of the Secretary of State of New Jersey. Plaintiff pursued this course both when it filed the first security agreement on December 29, 1966 and again when it filed the .second security agreement on October 4, 1967. It follows, therefore, that under New Jersey law, plaintiff’s security interest with respect to the S & B transaction was perfected by the October 4, 1967 filing. Defendant claims that its security interest was perfected on December 27, 1967, the date it took possession of the traxcavator. Therefore, even if defendant had a perfected security interest, it came into being as such later in time than plaintiff’s interest. It is therefore subordinate thereto and plaintiff is entitled to the traxcavator. (See N. J. Stat., tit. 12A, § 9-312, subd. [5].)
Plaintiff’s motion for summary judgment is granted; defendant’s cross motion for summary judgment is denied and plaintiff is adjudged the owner of the traxcavator.
Settle order which, in addition to the foregoing disposition, shall provide for an assessment of plaintiff’s damages for defendant’s detention of the traxcavator. (CPLR 3212, subd. Co].)