HEMPSTEAD BANK, Appellant, *v.* ANDY'S CAR RENTAL SYSTEM, INC., et al., Defendants, and AUTO BUYERS, INC., Respondent.

Second Department, July 6, 1970.

*Dalton & Henoch* (*Gilbert Henoch* of counsel), for appellant.

*Murray Schwartz* (*Herbert Monte Levy* of counsel), for respondent.

*Leo P. Dorsey* (*James F. Hart* of counsel), for New York State Bankers Association, *amicus curiae.*

*George R. Adams* for Long Island Bankers Association, Inc., *amicus curiae.*

MARTUSCELLO, J. The major question presented upon this appeal, which is one of first impression, is whether an automobile wholesaler who purchases used automobiles from an automobile leasing or rental company qualifies as a "buyer in ordinary course of business", as that term is defined by subdivision (9) of section 1–201 of the Uniform Commercial Code (hereinafter referred to as U. C. C.), and, therefore, purchases free of a third party's validly perfected security interest in the automobiles, pursuant to section 9–307 of the U. C. C.

" ' Buyer in ordinary course of business ' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker " (U. C. C., § 1–201, subd. [9]). Such a buyer " takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence " (U. C. C., § 9–307, subd. [1]).

The defendant Auto Buyers, Inc. is a wholesaler in the business of purchasing used automobiles from new car dealers and leasing and rental companies and reselling them to used car dealers. The defendant Andy's Car Rental System, Inc. (hereinafter called Andy's) was engaged in the business of renting or leasing automobiles. Between November, 1964 and May, 1965 the plaintiff, a commercial bank, financed Andy's purchase of new cars, taking back security interests therein. The " Security Agreement — Retail Instalment Contract " employed for the purpose contained the following provision: " 9. Default shall exist hereunder * * * (2) if the buyer shall or shall attempt to * * * (b) sell, encumber or otherwise dispose of this contract or any interest therein or the vehicle or any interest

therein." However, no similar provision is contained in the financing statement filed by the plaintiff pursuant to the U. C. C. with the County Clerk of Nassau County and the Department of State in Albany. As permitted by the U. C. C. (§ 9–402, subd. [1]), the plaintiff's financing statement sets forth the names and addresses of the debtor and of the secured party, but does not contain a description (i.e., the serial numbers) of the particular automobiles covered. Instead, it provides: " 5. This financing statement covers the following types (or items) of property: New motor vehicles, used motor vehicles, whether inventory or equipment, and all accessions thereto. All motor vehicles used in leasing and/or rental operations, both at the present and to be acquired hereafter." The statement also contains this notation: " Proceeds — Products of the Collateral are also covered."

Between May and October, 1965, Auto Buyers purchased from Andy's a total of 13 of the automobiles in which the plaintiff had subsisting and validly perfected security interests. Auto Buyers purchased the automobiles one, two or three at a time, paying a reasonable price for each. Although it knew that leasing and rental companies generally financed their cars, in accordance with its general practice it did not check to see if there were any liens filed against these automobiles. Nor was any inquiry made of Andy's in that regard at the times of purchase.

Andy's ultimately defaulted under its retail installment agreements with the plaintiff; and the plaintiff seeks to recover in conversion against Auto Buyers on the theory that the sale of the cars by Andy's to Auto Buyers was in violation of the plaintiff's rights under the security agreements. Auto Buyers' position is that it was a " buyer in ordinary course of business " (U. C. C., § 1–201, subd. [9]) and, as such, took free of the plaintiff's security interest. And so the jury apparently found. In our opinion, that finding is not merely contrary to the evidence, but is erroneous as a matter of law.

It will be recalled that in order to qualify as a buyer in the ordinary course of business one must (a) act " in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods " and (b) purchase " in ordinary course from a person in the business of selling goods of that kind " (U. C. C., § 1–201, subd. [9]).

Did Auto Buyers act in good faith and without knowledge that the sales to it were in violation of the plaintiff's rights under its security agreements with Andy's? " ' Good faith '

means honesty in fact in the conduct or transaction concerned '' (U. C. C., § 1–201, subd. [19]) and, in the case of a merchant, it means '' honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade '' (U. C. C., § 2–103, subd. [1], par. [b]).

The plaintiff argues that, since it was common knowledge in the trade that leasing and rental companies financed their cars, it was incumbent upon Auto Buyers, in the exercise of good faith, to make a search for liens. Whatever the common-sense appeal of this argument, it would appear that Auto Buyers is not to be charged with such bad faith as would deprive it of the protection afforded buyers in the ordinary course of business by section 9–307 merely because it failed to search for liens. That section expressly provides that one is entitled to its protection even if he knows of the existence of a security interest in the goods. There is no evidence that Auto Buyers actually knew that the sales were violative of the plaintiff's rights under the security agreements with Andy's (see U. C. C., § 1–201, subd. [25]). Although the *security agreements* provided that any sale of the cars constituted a default thereunder, the financing statement filed by the plaintiff contained no such provision. To the contrary, the financing statement contained a notation that the plaintiff's security interest extended to the proceeds of any sale of the collateral. Thus, even if Auto Buyers had checked for liens, there was nothing on file which would have revealed that a sale of the cars was prohibited. All that Auto Buyers would have learned was that the plaintiff had a security interest in the automobiles; and, even with such knowledge, Auto Buyers could have taken free of the plaintiff's security interest, assuming, of course, that Auto Buyers otherwise qualified as a buyer in the ordinary course of business. Apart from its failure to search for liens, there is nothing in the circumstances surrounding the sales to suggest that Auto Buyers acted in bad faith.

Did Auto Buyers purchase '' in ordinary course from a person in the business of selling goods of that kind '' (U. C. C., § 1–201, subd. [9])? Auto Buyers argues that, since Andy's was an automobile leasing and rental company, and since it is undisputed that all such companies periodically sell their used cars and replace them with new ones, Andy's was, therefore, in the business of selling cars. In support of this argument, Auto Buyers points out that subdivision (4) of section 9–109 of the U. C. C. provides that goods are to be classified as inventory '' if they are held by a person who holds them for sale *or lease* '' [emphasis

added] ; that the Official Comment* to section 9–109 states that a fleet of cars held by a car rental agency is classifiable as "inventory" (McKinney's Cons. Laws of N. Y., Book 62½, Part 3, p. 377) ; and that the Official Comment to section 9–307 states that subdivision (1) of that section applies "primarily to inventory" (p. 492).

In our opinion, the foregoing contention lacks merit. Although the cars held by Andy's are classifiable as inventory under subdivision (4) of section 9–109, it does not follow that anyone purchasing them therefore takes free of a third party's security interest therein. Similarly, while the Official Comment to section 9–307 indicates that that section applies primarily to sales from "inventory", it does not indicate that *every* sale from inventory is protected thereby. Indeed, section 9–307 itself does not even employ the word "inventory". The major consequence of the classification of Andy's cars as inventory is the manner in which any security interest therein is required to be perfected (see U. C. C., §§ 9–302 to 9–305). It would seem, therefore, that the critical question here is not whether the cars are classifiable as inventory, but whether Andy's was "in the business of *selling* goods of that kind" [emphasis added] (U. C. C., § 1–201, subd. [9]). Clearly, Andy's was not in the business of selling cars. Its business was leasing and renting cars. The periodic sale of its used cars was merely incidental to its leasing or rental business. In our opinion, subdivision (1) of section 9–307 has no application to such incidental sales (cf. *National Bank of Commerce* v. *First Nat. Bank & Trust of Tulsa,* 446 P. 2d 277, 282 [Okla.] ; Practice Commentary to U. C. C., § 9–307 in McKinney's Cons. Laws of N. Y., Book 62½, Part 3, pp. 491–492; 1 Coogan, Hogan and Vagts, Secured Transactions under U. C. C., § 6.02, n. 40). Accordingly, we hold that, as a matter of law, Auto Buyers did not purchase from a person engaged in the business of selling cars and is not, therefore, entitled to the protection afforded by subdivision (1) of section 9–307 to buyers in the ordinary course of business.

Apart from the provisions of section 9–307, however, a secured party may lose his security interest in the collateral upon a sale thereof by the debtor if the debtor's action "was authorized by the secured party in the security agreement *or otherwise*" [emphasis added] (U. C. C., § 9–306, subd. [2]) ; and "a claim to proceeds in a filed financing statement might be considered as impliedly authorizing sale or other disposition of the col-

---

* The "Official Comments" are by the National Conference of Commissioners on Uniform State Laws and the American Law Institute.

lateral, depending upon the circumstances of the parties, the nature of the collateral, the course of dealing of the parties and the usage of trade (see Section 1–205) '' (Official Comment to U. C. C., § 9–306 [McKinney's Cons. Laws of N. Y., Book 62½, Part 3, p. 485]). Although the issue of implied authorization was submitted to the jury, the trial court's charge thereon was contradictory and confusing. At one point, the court charged that the plaintiff's checking of the proceeds box on the filed financing statement '' did not authorize Andy's to sell the vehicles where the security agreements and chattel mortgages prohibited the sale.'' Later, the court charged that '' if the bank made claim to the proceeds of the sale, as it did in this case when it filed a financing statement, the check box, this act might also be considered as impliedly authorizing the sale of the automobiles.'' The charge was also incomplete. The court should have brought to the jury's attention the other factors bearing upon the resolution of this issue, such as the course of dealing between the parties and the usage of trade.

On the present state of the record, it is impossible to determine whether the jury's verdict in Auto Buyers' favor was predicated upon a finding that the latter had purchased in the '' ordinary course of business '' and, therefore, took free of the plaintiff's security interest—in which case the verdict would properly have to be set aside as contrary to law (see CPLR 4404, subd. [a]) — or upon a finding that the plaintiff had impliedly authorized the sales, or upon both such findings. Under the circumstances, the interests of justice require that the judgment be reversed and a new trial granted.

In sum, we hold that as a matter of law Auto Buyers did not purchase from a person in the business of selling automobiles and is not, therefore, entitled to the protection afforded to buyers in the ordinary course of business by subdivision (1) of section 9–307 of the U. C. C. There is, however, an issue of fact on the question of implied authorization of the sales by the plaintiff; and the action should be retried and submitted to the jury on that issue alone. Accordingly, the judgment should be reversed, on the law and the facts, and a new trial granted in the interests of justice, with costs to abide the event.

HOPKINS, Acting P. J., MUNDER, BRENNAN and BENJAMIN, JJ., concur.

Judgment reversed, on the law and the facts, and new trial granted, in the interests of justice, with costs to abide the event.