Jim McKENZIE, Appellant,

v.

Steven R. OLIVER, Appellee.

Court of Appeals of Kentucky.

Sept. 1, 1978.

Merle C. Clark, Danville, for appellant.

Joseph M. Scott, Jr., Stoll, Keenon & Park, Lexington, for appellee.

Before HOWARD, VANCE and WINTERSHEIMER, JJ.

HOWARD, Judge.

This is an appeal from a judgment entered in the Fayette Circuit Court, pursuant to a jury verdict, the jury having found in favor of plaintiff-appellee, Steven R. Oliver (hereinafter referred to as Oliver), against defendant-appellant, Jim McKenzie (hereinafter referred to as McKenzie), and having awarded $5,000.00 in damages to Oliver.

Oliver, as the purported owner of a certain 1974 Corvette, filed suit against McKenzie for conversion and wrongful attachment of the Corvette. McKenzie had the Corvette seized by the Fayette County Sheriff pursuant to a judgment entered on a note, signed by one Robert Davis (hereinafter referred to as Davis), and payable to McKenzie. To secure payment of the note signed by Davis, McKenzie had taken a security interest in the Corvette and other personalty. Davis was the owner of the Corvette at the time the note and security agreement were executed by him.

In the words of Sir Walter Scott: "Oh, what a tangled web we weave, when first we practise to deceive!" The tangled web of the various claimed interests in the 1974 Corvette was primarily woven by Davis. Davis purchased the Corvette in 1973, on a cash basis, from L. R. Cooke Chevrolet in Lexington, Kentucky. The car was subsequently registered in Fayette County in the name of Robert H. Davis for the years 1974 and 1975.

In April, 1975, Davis approached McKenzie for the purpose of obtaining a loan in the amount of some $12,000.00. Davis had borrowed money from McKenzie prior to this time and had always repaid the loans, although the previous loan amounts had never been more than a few thousand dollars. Davis executed a note and also a security agreement to secure payment of the note. The 1974 Corvette, worth approximately $7,000.00, was listed as an item of collateral in the security agreement. McKenzie testified that Davis promised to

give him the Certificate of Title and Registration to the car. However, McKenzie never received the Certificate of Title from Davis and McKenzie's lien was never noted thereon. McKenzie was also unable to record his security interest in the Corvette in the office of the Fayette County Court Clerk, again because he did not have the Certificate of Title to the Corvette.

Davis, meanwhile, was having financial troubles and had several lawsuits filed against him. He testified that he did not want his creditors to be able to levy on the Corvette. Davis, therefore, sold the Corvette to Mike Albert Leasing Company (hereinafter referred to as Albert Leasing), located in Cincinnati, Ohio, and leased it back from Albert Leasing with an option to repurchase. Albert Leasing was not informed of McKenzie's security interest in the Corvette. The Corvette was subsequently repossessed by Albert Leasing when Davis fell behind with his lease payments and Davis was forced to exercise his option to repurchase or lose the car.

Enter Oliver, a good friend of Davis for a number of years. Oliver was working in Texas and received a phone call from Davis about the imminent loss of the Corvette. An agreement was reached between Davis and Oliver to the effect that if Oliver bought the car, Davis would buy the car from him when he had the money and would also pay Oliver his traveling expenses and $500.00. Oliver testified that the agreement between he and Davis was that he (Oliver) would be the owner of the car until Davis paid the purchase price. Davis insisted that he was to be the actual owner of the car, with Oliver holding only the bare legal title. The testimony of Davis' wife and Davis' ex-secretary, concerning this transaction between Oliver and Davis, was that Davis was going to pay Oliver for the car and if Davis was unable to do so, Oliver would then sell the car and recoup his money.

Oliver returned from Texas in September, 1975, and applied for a loan with First Security National Bank and Trust Company of Lexington (hereinafter referred to as

First Security). Oliver borrowed approximately $5,700.00 from First Security and signed a promissory note therefor. Oliver also granted a security interest in the Corvette to First Security. A bank check was issued in the amount of $5,200.00, made payable to Albert Leasing and Oliver. The purchase price of the Corvette was $4,195.00. The money remaining after purchase of the car and some cash furnished by Davis' mother was paid to Albert Leasing for outstanding lease payments and penalties incurred by Davis.

Oliver was issued an Ohio Certificate of Title for the Corvette from Albert Leasing; no liens were noted thereon. The Ohio Certificate was delivered to First Security as additional collateral and was still in its files at the time of trial. First Security never filed its lien in the Fayette County Clerk's Office. Oliver also procured insurance on the Corvette naming First Security as loss payee. Oliver then returned to his job in Texas, leaving the Corvette in possession of Davis.

The car was not registered in Kentucky since Oliver testified he had no intention of driving the car on Kentucky highways. Davis, however, did drive the car, parked it in his driveway, and paid repair bills on it. After receiving a ticket for driving with expired Ohio temporary tags, Davis placed a Kentucky license plate, taken from his wife's old Thunderbird, on the Corvette.

McKenzie, meanwhile, had not received any payments from Davis on the note. Ultimately, McKenzie filed suit in Fayette Circuit Court on the note and security agreement executed by Davis. A default judgment was granted to McKenzie in December, 1975. McKenzie searched the records in the Fayette Circuit Court and determined that Davis was still the registered owner of the car, and that no liens were recorded against the Corvette. The Corvette was seized by the Sheriff, sometime in February, 1976, while it was parked in Davis' driveway. At the time the car was seized, Oliver was living in Lexington, however not at Davis' house. Oliver received a call from Davis, went to his house, and

attempted to stop the Sheriff from taking the Corvette. Oliver then instituted the within action against McKenzie.

At trial, Davis testified on behalf of McKenzie. Davis was, at that time, a resident of the Kentucky State Penitentiary in LaGrange, having been convicted of fraudulent practices in selling securities. Davis stated that Oliver knew of McKenzie's security interest in the Corvette. Oliver testified that he did not know of McKenzie's security interest. McKenzie didn't know whether Oliver knew of McKenzie's security interest.

Davis also attempted to establish that he had fully repaid Oliver for the purchase price of the Corvette. Oliver stated that he had received money from Davis, but stated he received less than Davis said he received. Oliver also testified that the money received from Davis was not for payment of the car but repayment for other amounts of money loaned to Davis by Oliver and for repayment of bills, most notably phone bills in excess of $1,000.00 per month, paid by Oliver on Davis' behalf. Needless to say, Oliver and Davis were no longer friends at the time of trial.

A portion of the jury instructions given reads as follows and the findings of the jury are indicated by an "X":

The Court instructs the jury that ownership of an automobile is determined from all the factors involved. Compliance or noncompliance with registration laws is not the sole determining factor but may be considered as evidence. Ownership may be determined upon the basis of the intent of the parties to a particular transaction.

Please answer the following questions: Question No. 1

Do you believe that the plaintiff Steven R. Oliver was the owner of the 1974 Chevrolet Covette (sic) on February 4, 1976, when it was seized by the Sheriff of Fayette County?

(Check one) Yes _X_ No ___

If your answer to the above question is "yes" you will answer the following question. If your answer to the above question is "No" you will return a verdict in favor of the defendant, Jim McKenzie. Question No. 2

Do you believe that the plaintiff Steven R. Oliver knew that Jim McKenzie had a security interest in the 1974 Chevrolet Corvette when he became the owner of same?

(Check one) Yes ___ No _X_

If your answer to Question No. 2 is "Yes" you will return a verdict in favor of the defendant, Jim McKenzie. If your answer to Question No. 2 is "No" you will return a verdict in favor of the plaintiff, Steven R. Oliver, in a sum not to exceed the fair and reasonable market value of said automobile not to exceed the sum of $7,000, the amount claimed in the complaint.

McKenzie argues on this appeal that he has acquired the superior interest in the Corvette and is entitled to judgment in his favor as a matter of law. McKenzie bases this contention on three different theories, namely: 1) Oliver is estopped to claim ownership in the Corvette since he clothed Davis with indicia of ownership to the car; 2) The agreement between Oliver and Davis was essentially a conditional sales agreement, and delivery of the car to Davis, as purchaser, was sufficient to cause Davis to be deemed the owner; and 3) The transaction between Davis and Oliver was a fraudulent conveyance as a matter of law.

Oliver states that he has acquired the superior interest in the Corvette by virtue of KRS 355.9–301(3) which governs priority of interests in collateral as between a purchaser (Oliver) and an unperfected lienholder (McKenzie). Oliver also states that the fraudulent conveyance statute does not apply, and even if it did, the jury found that Oliver had no knowledge of McKenzie's security interest thus protecting Oliver as a purchaser. Oliver also states that the jury found that he was the owner of the car in February, 1976.

McKenzie dismisses summarily three different aspects of this case which we deem important. These are the two aforemen-

tioned findings by the jury and the sale of the Corvette by Davis to Albert Leasing, an innocent party.

McKenzie's first argument is that Oliver is estopped to claim ownership in the Corvette because he clothed Davis with certain indicia of ownership and also that Oliver failed to register the car in Kentucky. The trial court's instructions stated that ownership of an automobile is to be determined from the intent of Davis and Oliver. The trial court also stated that compliance or noncompliance with applicable registration laws is not the sole determining factor of ownership.

■ In the instant case, there was clearly a factual issue as to the ownership of the car as between Oliver and Davis, even though Davis was clothed with certain indicia of ownership. Compliance with registration laws is not dispositive of ownership, as stated in the instructions, since the provisions of KRS Chapter 186, governing licensing of motor vehicles, are police measures and regulatory in nature. *Moore v. Wilson,* 230 Ky. 49, 18 S.W.2d 873 (1929); *Siler v. Williford,* Ky., 350 S.W.2d 704 (1961).

■ Since ownership of the car was a factual issue, we do not believe that Oliver was estopped to claim ownership as a matter of law. Besides, we believe that the instruction on ownership given by the trial court encompasses the doctrine of estoppel. Estoppel is always a question of fact to be determined by the circumstances of each case. *Anspacher v. Utterback's Adm'r,* 252 Ky. 666, 68 S.W.2d 15 (1934); *Duval v. Steele,* Ky., 453 S.W.2d 14 (1970).

■ Closely related to the above argument is McKenzie's argument that the transaction between Oliver and Davis was a conditional sales agreement between Oliver and Davis, and delivery to the conditional purchaser, Davis, was a sufficient fact to cause Davis to be deemed the owner. In support of this contention, McKenzie cites *Motors Insurance Corporation v. Safeco Insurance Company of America,* Ky., 412 S.W.2d 584 (1967), wherein the court held that title to an automobile had passed from

a seller to a buyer, pursuant to KRS 355.2–401, even though payment for the car had not been made. The issue concerned whose insurance company would be liable for damages sustained in a collision. However, in *Motors Insurance Corporation, supra,* both buyer and seller agreed that the buyer was the owner of the car prior to the accident, even though the purchase price had not been paid nor had the title papers been processed.

In the instant case, Oliver's testimony was to the effect that although Davis was permitted to use the car, there was no intent on the part of Oliver to give ownership of the car to Davis until the purchase price was paid. *See Rash v. North British & Mercantile Ins. Co.,* Ky., 246 S.W.2d 990 (1951), distinguished in *Motors Insurance Corporation, supra.* That title to the car may have passed to Davis under KRS 355.-2–401 still did not make him the owner of the car. The instructions to the jury read that ownership was to be determined from all the factors involved, including the intent of Davis and Oliver as to the transaction between them concerning the Corvette. Without belaboring the point, the jury determined that Oliver was the owner.

McKenzie's final argument is that the transaction between Oliver and Davis concerning the Corvette should be held a fraudulent conveyance as a matter of law. KRS 378.010 renders a conveyance made by a party with an intent to defraud creditors void, as to a purchaser for value, only if that purchaser has notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

■ It is also true that when sufficient badges of fraud are shown, a party may be entitled to a directed verdict on the issue of a transfer being fraudulent. However, such directed verdict is proper only in the absence of contradictory proof that the transfer or conveyance was made fairly and without intent to defraud the creditor. *Russell County Feed Mill, Inc. v. Kimbler,* Ky., 520 S.W.2d 309, 311 (1975).

Although Oliver was purchasing the Corvette pursuant to some kind of agreement with Davis, Oliver obligated himself on the note, in excess of $5,000.00, which he signed with First Security. Oliver also stated that he did not know about McKenzie's security interest nor did he know about Davis' scheme to defraud his creditors. Further, Oliver purchased the Corvette from Albert Leasing for a consideration we assume Albert Leasing thought adequate.

 To indicate a joint intent to defraud creditors, the consideration paid must be so disproportionate to the real value of the property as to raise a presumption of fraud. *Interstate Acceptance Corporation v. Lovins,* Ky., 380 S.W.2d 805, 807 (1964). And although Oliver may have known that Davis was in financial trouble, "[k]nowledge that a proposed grantor is in debt does not charge a purchaser with notice that the former is selling to defraud his creditors." *Interstate Acceptance Corporation, supra,* at page 808.

 Certainly Davis acted fraudulently. But, we do not believe that McKenzie was entitled to a directed verdict, thereby setting aside the transaction between Oliver and Davis as fraudulent and void. There was a jury issue as to Oliver's knowledge of McKenzie's security interest in the Corvette and the jury found in Oliver's favor, in effect holding that Oliver was a good-faith purchaser.

KRS 186.045 provides for the filing of financing statements affecting vehicles and notation of liens on the certificate of title. In *General Motors Acceptance Corporation v. Hodge,* Ky., 485 S.W.2d 894, 896 (1972), the court held that the failure of a county court clerk to note a finance company's lien on a registration receipt, issued to a person who sold the automobile to a defendant, rendered the lien unenforceable against that defendant who purchased the car without notice of the lien. The court in *GMAC v. Hodge, supra,* quotes a section of 7 Am. Jur.2d, *Automobiles and Highway Traffic,* § 46, page 631, reading as follows: "Where statutory provision is made for the notation of liens on motor vehicles on the certificate

of title, the failure to comply with such provision generally renders the liens unenforceable as against third persons without actual knowledge thereof."

In the instant case, it was not a county clerk who failed to note the lien on the certificate, but rather Davis who failed to note McKenzie's lien. Davis also failed to give McKenzie the Certificate of Title to the Corvette as requested by McKenzie. KRS 186.045(9) provides that:

Any person violating any provision of this section or any person refusing to surrender a registration or transfer certificate upon request of any person entitled thereto, is subject to the penalties provided in subsection (1) of KRS 186.990.

KRS 186.990(1) provides only for a monetary fine.

KRS 355.9–301 provides for a rule of priority between an unperfected security interest and certain other parties. Subsection (1)(c) of that statute, applicable to this case, reads as follows:

(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of

. . . . .

(c) in the case of goods, instruments, documents, and chattel paper, a person who is not a secured party and who is a transferee in bulk or other buyer not in ordinary course of business to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected . . .

In a Texas case construing its provision, similar to KRS 355.9–301, *Phillips Ford v. St. Paul F. & M. Ins. Co.,* 465 S.W.2d 933, 42 A.L.R.3d 1158 (Tex.1971), the court stated that an unperfected security interest is subordinate to the interest of an innocent buyer who has given value and received delivery of the secured collateral. In that case, the seller had procured a certificate not showing the lien of the secured party. However, the court went on to hold that because seller failed to properly execute the certificate of title, the sale was void as

between the seller and buyer, and the secured party prevailed.

 We cite this case in conjunction with KRS 186.045(9) and KRS 186.990(1). The sale of the Corvette by Davis to Albert Leasing, without any notation of McKenzie's lien on the certificate of title, did not render that sale void. And Oliver, since he was a good-faith purchaser, as found by the jury, must prevail over McKenzie who holds an unperfected security interest.

KRS 355.9–301(1)(c) requires the buyer to be a "buyer *not* in ordinary course of business" to be entitled to priority under that statute. KRS 355.1–201(9) defines a "buyer in ordinary course of business" as being ". . . a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course *from a person in the business of selling goods of that kind* but does not include a pawnbroker." (Emphasis ours)

If a leasing company that sells a car is in the business of selling goods of that kind, Oliver would be a buyer in the ordinary course of business and would not be entitled to the protection of KRS 355.9–301(1)(c). He would still be protected under the rationale of *General Motors Acceptance Corporation v. Hodge, supra.* However, we believe that Oliver was *not* a buyer in the ordinary course of business. *See* 15A Am. Jur.2d *Commercial Code,* section 4, page 460, note case *Hempstead Bank v. Andy's Car Rental System, Inc.,* 35 A.D.2d 35, 312 N.Y.S.2d 317, holding that an auto wholesaler's purchase of cars from an auto leasing and rental company was not a purchase from a person engaged in selling cars.

The judgment of the trial court is affirmed.

All concur.