181 N.J. Super. 41 (1981)
436 A.2d 553
SEA HARVEST, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
RIG & CRANE EQUIPMENT CORP. AND ALLIS CHALMERS CREDIT CORP., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Cape May County.
Decided August 6, 1981.
*44 Norman L. Zlotnick for plaintiff (Bloom & Zlotnick, attorneys).
Pasquale J. Cardone for defendant, Allis Chalmers Credit Corp. (Valore, McAllister, Aron, Westmoreland & Vesper, attorneys).
HAINES, J.S.C.
This is an action brought by Sea Harvest, Inc., the purchaser of a hydraulic crane, against Rig & Crane Equipment Corp., which sold the crane to plaintiff, and Allis Chalmers Credit Corp., a creditor of Rig & Crane claiming a perfected security interest in the crane. Plaintiff seeks a permanent injunction against repossession of the crane by Allis Chalmers and a declaratory judgment confirming plaintiff's title to the crane and damages. Rig & Crane has not defended the action.
The parties have submitted the matter for determination on the record. The undisputed facts are as follows. Plaintiff needed a hydraulic crane for its fishery operations; it arranged to lease one, under a verbal agreement, from defendant Rig & Crane Equipment Corp. on August 11, 1976. The crane was then at Rig & Crane's place of business in Pennsylvania and was delivered to Sea Harvest, in New Jersey, on August 12, 1976. On September 12, 1977 plaintiff obtained a written lease (reflecting a commencement date of "8-12-76") and an option to purchase the crane for $19,950, against which price all rental payments were to be credited. On March 6, 1978 plaintiff exercised the option in accordance with its terms.
*45 On October 11, 1976 defendant Allis Chalmers loaned $39,000 to Rig & Crane, securing the loan with a security agreement covering the crane then leased to Sea Harvest and later the subject of its option. The security agreement contained no provision for the sale of the equipment. Financing statements referring to the agreement were filed by Allis Chalmers in Pennsylvania on October 11, 1976 and on November 3, 1977; an additional statement was filed in New Jersey on December 5, 1977. Rig & Crane failed to repay its loan; on April 10, 1978 Allis Chalmers advised Sea Harvest that it intended to repossess the crane. This suit was then commenced.
Plaintiff's claim to title rests upon N.J.S.A. 12A:9-307(1), which provides:
A buyer in ordinary course of business (sub-section (9) of 12A:1-201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.
Plaintiff maintains that it is a buyer in the ordinary course, without knowledge of the existence of the security interest, and it thus entitled to take free of any claim of Allis Chalmers. Cunningham v. Camelot Motors, Inc., 138 N.J. Super. 489, 493 (Ch.Div. 1975). A "buyer in the ordinary course" is defined in subsection (9) of N.J.S.A. 12A:1-201 as
... a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods, buys in the ordinary course from a person in the business of selling goods of that kind. . .
Allis Chalmers claims that Rig & Crane was in the business of leasing cranes and similar equipment and was not "in the business of selling goods of that kind". The requirement is crucial. The First Nat'l Bank of Bay Shore v. Stamper, 93 N.J. Super. 150 (Law Div. 1966), considered the position of the purchaser of an automobile which was subject to a conditional sales contract. The seller was not an automobile dealer. The court said (at 159): "Clearly, defendant was not a buyer in the ordinary course when he purchased the Thunderbird from Stamper, because it was not bought in the ordinary course from a person in the business of selling goods of that kind."
*46 It is clear that one who leases is not a seller of goods under the statute. While New Jersey courts have not passed on the question, other authorities are convincing. In Hempstead Bank v. Andy's Car Rental System, Inc., 35 App.Div.2d 35, 40, 312 N.Y.S.2d 317, 321 (App.Div. 1970), the court held that a purchaser of a car from a rental company was not a buyer in the ordinary course of business. White & Summers, Uniform Commercial Code (1972), at 941, commented on the decision:
The case seems a reasonable interpretation of § 9-307(1). One who buys from a seller whose principal business is renting or using goods should be on notice that he may be subject to a security interest and that the secured creditor will not necessarily contemplate that buyers take free. We suspect that as an empirical fact such buyers are more likely to check the filings and that it is a reasonable allocation of risks between the innocent secured creditor and the innocent purchaser to allow the secured creditor to win such cases.
Other cases supporting this interpretation are O'Neill v. Barnett Bank of Jacksonville, 360 So.2d 150 (Fla.D.Ct.App. 1978), and McKenzie v. Oliver, 571 S.W.2d 102 (Ky.App. 1978). In O'Neill the court held (360 So.2d at 152) that a sale incidental to the principal business of the seller did not make the seller a person who was in the business of selling goods and therefore the purchaser was not a buyer in the ordinary course. McKenzie involved facts similar to those in question here and held that a leasing company which sells used equipment is not a seller of goods of that kind. Hence, a purchaser of that equipment is not a buyer in the ordinary course. 571 S.W.2d at 108.
A buyer's misunderstanding that the seller was in the business of selling does not improve the former's position. The Code does not make knowledge a factor, and the only decision located which deals with the subject, Antigo Co-op Credit Union v. Miller, 86 Wis.2d 90, 96, 271 N.W.2d 642, 645 (Sup.Ct. 1978), held to the contrary. In that case, the court said that the seller must deal in goods of the kind in question and that the buyer's belief is immaterial on this issue, although relative to the question of good faith.
*47 The proofs show that Rig & Crane was in the leasing business, and perhaps primarily in the leasing business. They also show that it was a substantial seller of goods of the kind purchased by Sea Harvest. Its president testified that 10% of its inventory was for sale, 90% for rent, during the years 1975, 1976, 1977 and part of 1978 (when Rig & Crane went out of business). A financial statement showed sales of $1,300,000 and rentals of $425,000 in 1976. It was admitted that Rig & Crane's equipment was for sale "at an advantageous price." Its advertising offered equipment for sale. As of April 30, 1977 its financial records showed equipment sales and service in the amount of $3,466,000. Its president minimized the sales activity, suggesting that equipment rental represented the only real interest of the company. This was not convincing in view of other evidence. Rig & Crane was not making sales which were merely incidental to its principal business; that business included the sale of cranes and other equipment. Rig & Crane was therefore "a person in the business of selling goods of that kind".
The parties differ as to the proper interpretation of the words "good faith" used in § 1-201. Plaintiff claims that the term should be interpreted as defined in the Chapter 1 general definition, N.J.S.A. 12A:1-201(19), which states that "(g)ood faith means honesty in fact in the conduct or transaction concerned." Defendant, on the other hand, claims that the correct definition is that which applies to merchants as set forth in N.J.S.A. 12A:2-103(1)(b) dealing with sales:
(1) In this Chapter unless the context otherwise requires
....
(b) "Good faith" in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. [Emphasis supplied]
Defendant contends that plaintiff is a merchant and under this standard was required to check the appropriate records for financing statements before making its purchase. Since this precaution was not taken, it is argued that plaintiff is not *48 entitled to the protection of § 307 because it was not a "buyer in the ordinary course."
Plaintiff's merchant status must be determined in the light of N.J.S.A. 12A:2-104(1):
Merchant means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.
This is clarified in the Official Comment to the provision, which reads in part:
....
2. The term "merchant" as defined here roots in the "law merchant" concept of a professional in business. The professional status under the definition may be based upon specialized knowledge as to the goods, specialized knowledge as to business practices, or specialized knowledge as to both and which kind of specialized knowledge may be sufficient to establish the merchant status is indicated by the nature of the provision.
....
... This group of sections (including 2-103(1)(b)) applies to persons who are merchants under either the "practices" or the "goods" aspect of the definition of merchant.
Generally, case law provides that the term "merchant" is not to be limited to any dictionary meaning of a buyer or seller of goods. See Pecker Iron Works, Inc. v. Sturdy Concrete Co., 96 Misc.2d 998, 1002, 410 N.Y.S. 251, 254 (Cir.Ct. 1978). Rather, the test is whether a person is so experienced and knowledgeable under the circumstances that he should be charged with the more substantial burden imposed upon a merchant. See 1 Anderson, Uniform Commercial Code (2 ed. 1970), 283, § 2-201:50 and 219-22, § 2-104:4-2 and 2-104.7.
Plaintiff bought and sold equipment, including six cranes, for several years while in the fishing business. The equipment was used in the trade; sales occurred only when equipment was considered no longer useful. Plaintiff's principals were also familiar with the sale of trucks; a separate corporation in which they were involved, later merged with plaintiff, had been a dealer in trucks. Nothing in the record, however, shows that plaintiff had any familiarity with financing arrangements involving *49 security agreements or financing statements. Its crane transactions never required such documents, when financing trucks or other equipment with title documents (the crane had none), its principals understood only that liens could be obtained by endorsing title certificates. Its transactions in goods and its participation in business practices were too limited to provide the specialized knowledge which would subject it to the good faith burden imposed upon a merchant.
Even if plaintiff were held to be a merchant, it does not follow that the Chapter 2 "good faith" standard for merchants is applicable to a Chapter 9 buyer in the ordinary course. The issue has been the subject of conflicting determinations in courts of other jurisdictions; it has not been decided in New Jersey. In favor of the application of the Chapter 2 standard are Swift v. J.I. Case Co., 266 So.2d 379, 381 (Fla.D.Ct.App. 1972); International Harvester v. Glendenning, 505 S.W.2d 320, 325 (Tex. Ct. App. 1974) (dictum). See, also, Comment, "Good Faith Standard Applicable to Merchant Buyers Under the Code," 4 Rut.-Cam. L.J., 132 (1972); contrary authority includes Martin Marietta Corp. v. N.J. Nat'l Bank, 612 F.2d 745, 751-752 (3 Cir.1979), and Sherrock v. Commercial Credit Corp., 290 A.2d 648, 650 (Del.Sup.Ct. 1972).
The statutory language and policy concerns favor the conclusion that the merchant "good faith" standard of Chapter 2 is not applicable to N.J.S.A. 12A:9-307, that the proper standard is one of subjective good faith set forth in Chapter 1, N.J.S.A. 12A:1-201(19). Section 307 itself refers to the Chapter 1 general definition when it uses the words "buyer in the ordinary course of business," lending considerable weight to this interpretation. That statutory direction ought to be followed unless a compelling reason, not present her, requires it to be ignored. Other provisions of the Uniform Commercial Code support the conclusion. N.J.S.A. 12A:2-103(2), which sets forth the merchant standard for Chapter 2, commences with the limiting phrase, "In this chapter, unless the context otherwise requires," thus indicating *50 the standard of § 103 is to be applied to Chapter 2 transactions and not to those controlled by other articles, when, as here, the chapter does not demand a broader application. Martin Marietta Corp. v. N.J. Nat'l Bank, supra at 751. It is also clear that Chapter 2 is limited in its application N.J.S.A. 12A:2-102 reads in part:
Unless the context otherwise requires, this Chapter applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction. .. .
If the Chapter 2 standard (2-103) is applied to the present security interest, contrary to this restrictive language, merely because a sale of goods is also involved, logic would compel its application in almost every security relationship, since usually some sales transaction surrounds its creation. This would be an unreasonable statutory construction.
Sea Harvest was honest in fact with respect to the transaction involved; it knew nothing of Allis Chalmers' security interest at the time it exercised the option to purchase. It was not a merchant; for that reason, and also because the good faith standard for merchants does not apply to a Chapter 9 buyer in the ordinary course, "honesty in fact" is the test of good faith, a test which the plaintiff has met through the uncontradicted testimony of its principal. Plaintiff is therefore a "buyer in the ordinary course" entitled to the protection of § 9-307(1) and takes free of the security interest created by Allis Chalmers.
Sea Harvest also contends that Allis Chalmers' failure to file a financing statement in New Jersey within four months of the date the crane was moved to this state from Pennsylvania bars its claim. N.J.S.A. 12A:9-103(3) provides in part that
... If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought in this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state.
*51 Plaintiff's reliance upon this rule is misplaced. Subparagraph (3) of § 9-103 does not apply if subparagraph (2) of that section is effective. The latter subsection provides:
If the chief place of business of a debtor is in this state, this Chapter governs the validity and perfection of a security interest and the possibility and effect of proper filing with regard to general intangibles or with regard to goods of a type which are normally used in more than one jurisdiction (such as automotive equipment, rolling stock, airplanes, road building equipment, commercial harvesting equipment, construction machinery and the like) if such goods are classified as equipment or classified as inventory by reason of their being leased by the debtor to others. Otherwise, the law (including the conflict of laws rules) of the jurisdiction where such chief place of business is located shall govern. If the chief place of business is located in a jurisdiction which does not provide for perfection of the security interest by filing or recording in that jurisdiction, then the security interest may be perfected by filing in this state.
In Foley Machinery Co. v. John P. Brady Co., 62 Misc.2d 777, 310 N.Y.S.2d 49 (Sup.Ct. 1970), the court held that a traxcavator (road building equipment) was equipment subject to § 9-103(2). Large earth-moving trucks were found to be within that section in G.E. Credit Corp. v. R.A. Heinz Constr. Co., 302 F. Supp. 958 (D.C.Or. 1969). A careful reading of § 9-103(2) indicates that the "equipment" covered by that subparagraph is intended to be that which is owned and used by the debtor or is part of the debtor's leasing inventory. It does not apply to sales inventory. This interpretation is confirmed by White & Summers, supra at 852.
First, goods are covered by 9-103(2) only if they are classified as equipment or classified as inventory by reason of their being leased by debtor to others. That qualifying phrase will exclude all consumer goods (including such mobile goods as autos) and all inventory which is held for sale rather than lease.
In the present case the crane was first leased to Sea Harvest and later sold. Allis Chalmers obtained its security agreement before the crane was sold and therefore when it was part of Rig & Crane's leasing inventory and not a part of its sales inventory. Consequently, the transaction falls within the language of subsection 2. Allis Chalmers' security interest, perfected in Pennsylvania, a state which provides for the filing of a security interest and in which Rig & Crane had its chief place of business, cannot be challenged under the four-month rule.
*52 For the other reasons stated, however, plaintiff owns the crane free and clear of any security interest of Allis Chalmers and any interest of Rig & Crane. Judgment, with costs, is to be entered in favor of plaintiff. The proofs do not support an award of damages.