OPINION OF THE COURT
Paul Kelly, J.
On August 16, 1978, respondent, the First National Bank of Moravia, served an order of seizure dated July 18, 1978 from the Supreme Court of the State of New York, County of Cayuga, upon petitioner F. C. Marine Repair, Inc., doing business as Fred Chali Marine. Said order was issued for the purpose of permitting the Sheriff of Nassau County to take into his possession three boats, each designated as a 32-foot New Yorker, claimed to be the property of respondent Moravia Industries, Inc., against whom respondent First National Bank of Moravia had obtained said order of seizure.
All proceedings with respect to the validity of the Sheriff’s seizure, the disposition of the property in question, and injunctive relief are now moot by reason of the posting of substantial bonds by the adverse claimants.
Thus, the court is free to address itself to the merits of the controversy, namely, a determination of the conflicting property rights of the adverse claimants.
Petitioner F. C. Marine Repair, Inc., purchased the boats in question through the use of a floor plan agreement entered into between it and copetitioner European-American Bank & Trust Company. As per said agreement, European-American paid the purchase price directly to the seller of the boats, Moravia Industries, Inc., corespondent herein, and received from F. C. Marine Repair, Inc., a Uniform Commercial Code security agreement, a Uniform Commercial Code financing statement (duly filed and perfected on or about April 24, 1978), and a trust receipt for each of the boats in issue.
Respondent First National Bank of Moravia claims these boats are still the property of Moravia Industries, Inc., and that said First National Bank has a previously perfected *551 security interest in the property of Moravia Industries, Inc., which attaches to the within boats. Respondent First National further contends that the sale of these boats constituted a bulk sale under subdivision (1) of section 6-102 of the Uniform Commercial Code and is, therefore, void as to it.
The first issue for determination is whether the sale of these boats constituted a bulk sale. In this regard, the intent of the transferor is irrelevant; it is either a bulk transfer or it is not. Petitioner, hereinafter F. C. Marine, contends that the boats were purchased in the ordinary course of business from Moravia Industries, Inc.
The court is of the opinion that the within sale does not constitute a bulk transfer as contemplated by the Uniform Commercial Code. Subdivision (1) of section 6-102 of the cited code reads in pertinent part as follows: "A 'bulk transfer’ is any transfer in bulk and not in the ordinary course of the transferor’s business of a major part of the materials, supplies, merchandise or other inventory”.
Recognizing the onerous nature of the restrictions imposed by this type legislation, it has been early construed that the Bulk Sales Act was meant to apply only in " 'rare and irregular cases’, only to the 'extraordinary sale * * * such as can occur but few times in the life of a merchant’.” (Sternberg v Rubenstein, 305 NY 235, 239, citing Wright v Hart, 182 NY 330, 346, per Vann, J., dissenting, whose dissent was later adopted unanimously in Klein v Maravelas, 219 NY 383.)
This construction, when viewed in light of the dealings between the parties herein, would appear inapplicable. It is uncontested that F. C. Marine had, pursuant to agreement, been receiving shipments of boats from Moravia Industries, Inc., on a more or less regular basis since January, 1977, having received approximately 18 boats during this period. Both the principals of F. C. Marine and Moravia Industries have acknowledged in their papers that the deliveries here in question were contemplated as nothing more than a continuation of an ongoing arrangement between the parties. It also appears that the consideration to be paid for these boats was the amount originally agreed upon in 1977.
Moreover, the three boats in question constituted only a partial delivery of eight finished and unfinished boats which Moravia shipped during this period, the other five having been sent to different distributors.
Article 6 of the Uniform Commercial Code was designed to *552 protect creditors from fraudulent conveyances. The transaction here before us, where deliveries were being made on a regular basis, where fair consideration was paid and there is no showing of an intent to defraud creditors, cannot be said to fall within its purview.
Having determined that the within sale was not a bulk transfer, the court now turns to the question of whether F. C. Marine was a buyer in the ordinary course of business. A buyer in the ordinary course of business has been defined as follows: " 'Buyer in ordinary course of business’ means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind”. (Uniform Commercial Code, § 1-201, subd [9].) It is further provided in subdivision (1) of section 9-307 of the Uniform Commercial Code as follows: "A buyer in ordinary course of business [subsection (9) of section 1-201] other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.”
Reading the two provisions together, it results that the buyer takes free if he merely knows that there is a security interest which covers the goods but takes subject if he knows, in addition, that the sale is in violation of some term in the security agreement not waived by the words or conduct of the secured party. (See Official Comment, McKinney’s Cons Laws of NY, Book 62V2, Uniform Commercial Code, § 9-307, p 492.)
It is the determination of the court that petitioner F. C. Marine is a buyer in the ordinary course of business. Petitioner has done business with respondent Moravia Industries, Inc., for a substantial period of time. Petitioner is a dealer in boats including the sale thereof on a retail level; respondent is a manufacturer of boats. The boats involved in the within transaction were purchased in the ordinary course of business and, indeed, were part of a continuing pattern which had evolved over a period of 18 months.
Additionally, petitioner herein acted in good faith in that he purchased the boats, which is the subject of this proceeding, without any knowledge whatever of respondent First National Bank of Moravia’s security interest therein. Furthermore, he was not aware that Moravia Industries, Inc., was going out of *553 business or even contemplating such a move. In any event, it was not incumbent upon petitioner to make a search for any possible security interests. As one court has stated: "Whatever the common-sense appeal of this argument, it would appear that [petitioner] is not to be charged with such bad faith as would deprive it of the protection afforded buyers in the ordinary course of business by section 9-307 merely because it failed to search for liens.” (Hempstead Bank v Andy’s Car Rental System, 35 AD2d 35, 38.)
Moreover, although the security agreements provided for inventory, the financing statement filed by respondent refers to inventory of raw materials. In the opinion of the court, even if petitioner had checked for liens, nothing on file would have revealed that a sale of boats was prohibited. A buyer who takes free of a perfected security interest of course takes free of an unperfected one (Official Comment, McKinney’s Cons Laws of NY, Book 62 Vi, Uniform Commercial Code, § 9-307, p 492).
Accordingly, the cross motion is denied in all respects, the order of attachment is vacated, and possession of the boats in question is awarded to F. C. Marine Repair, Inc., subject to the security interest of European-American Bank & Trust Company.