## JOSEPH BENEDUCI *v.* CANDIDO A. VALADARES
## (AC 21950)

Foti, Dranginis and Flynn, Js.

Argued September 13—officially released December 3, 2002

*William J. Ingersoll,* for the appellant (plaintiff).

*David Fite Waters,* for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Joseph Beneduci, is the owner of property adjoining land of the defendant, Candido A. Valadares. A dispute arose between the parties regarding a common driveway, which passes over land owned by the plaintiff. The parties presented evidence to an attorney trial referee (referee) regarding the plaintiff's claims for injunctive relief and damages and the defendant's counterclaim for damages.[1] To determine the issues underlying this dispute, the referee was required to determine the extent of the defendant's rights to use the right-of-way. The referee issued a report as to his findings and legal conclusions. Thereafter, the trial court rendered judgment on the referee's report. In doing so, that court, inter alia, enjoined the defendant "from engaging in any activity on the large right-of-way beyond using it for ingress and egress to his property and . . . from . . . interfering with any activity of the plaintiff on the large right-of-way which does not affect the defendant's use of the driveway for ingress and egress to his property." The court further enjoined the defendant "from using the easterly portion of the small right-of-way and from interfering with [the] plaintiff's sign." The plaintiff challenges four aspects of the judgment on the referee's report: (1) the creation of a passing area in the right-of-way; (2) the authoriza-

---

[1] The plaintiff's claims for relief were as follows:

"1. That the defendant be enjoined from performing any act or utilizing the right-of-way for any purpose except ingress and egress.

"2. Money damages.

"3. Attorney fees.

"4. Costs and fees.

"5. Such other and further relief the court deems appropriate."

The defendant's counterclaim did not plead a claim for relief, but the defendant did plead damages in the body of his complaint.

tion to the defendant to make certain improvements to the right-of-way; (3) the restriction on the plaintiff from removing vegetation near the right-of-way; and (4) the allocation of maintenance costs of the right-of-way. We affirm, in part, and reverse, in part, the judgment of the trial court.

The following facts, as set forth in the referee's report, are relevant to our resolution of the plaintiff's appeal. "Sometime prior to 1946, a right-of-way was created over certain property located on Styles Lane in Norwalk, Connecticut (hereinafter the large right-of-way). That right-of-way is approximately 800 feet long, about twenty-four feet wide, and partially fronts on Styles Lane, a public thoroughfare. The large right-of-way was the only means of ingress and egress to a parcel of land of approximately four acres (the original parcel). In 1946, the original parcel was divided. In that year, a map was prepared by Samuel [W.] Hoyt, Jr. Co., Inc., entitled 'Map of Property Prepared for [Hermine] Peterson at Norwalk, Conn.' That map . . . is filed with the Norwalk land records as Map No. 2350. The map reflects that the original parcel had been divided into (a) a one acre parcel with a residence which became 6 Styles Lane and was ultimately purchased by the defendant in 1995; and (b) an undeveloped three acre parcel which the plaintiff subsequently purchased, and which became 10 Styles Lane.

"The large right-of-way existed at the time of the division to service all of the original parcel. Map No. 2350 reflects that it was apparently granted in a deed previously filed at Volume 169-88 of the Norwalk land records. That deed is not in evidence. Therefore, the language of the original deed granting the large right-of-way that now services both 6 Styles Lane and 10 Styles Lane is not before the court.

"As part of the 1946 subdivision, a small right-of-way was created on the 10 Styles Lane parcel to connect

the large right-of-way to 6 Styles Lane. It is [a] four sided piece of land, the shortest of which is twenty-nine feet long, and the longest not quite forty-seven feet. While Map No. 2350 reflects the dimensions and location of the small right-of-way, no deed was presented at trial that purported to reflect the language of the grant of that right-of-way. Combined, the two rights-of-way are the only means of ingress and egress for 6 Styles Road. Absent the deeds, there is no proof that the rights-of-way were for anything other than ingress and egress, which has been their traditional use, and I find that they did not include parking, landscaping or storing of logs.

"In a deed filed on October 21, 1970, in the Norwalk land records at Volume 737, Page 572, Helen Merrill and Anita Ross sold approximately three acres of undeveloped land to Marissa [Beneduci] and [the plaintiff] Joseph Beneduci, where a dwelling, 10 Styles Lane, was ultimately built. The deed conveying the land referred for its description to Map 1520, excepting the one acre premises described in Map 2350, which now belongs to the defendant. The deed purported to convey to Mr. and Mrs. [Beneduci] 'a right of way from said premises to Styles Lane as shown on said maps,' i.e., the large right-of-way. Accordingly, access to 10 Styles Lane was over the same large right-of-way as to 6 Styles Lane. However, it appears that Merrill and Ross were not the original grantors of the right-of-way, but rather successors to the original grantee. The deed also reflects that the land was conveyed free and clear of encumbrances except, *inter alia*, 'a right of way at the extreme southerly portion of said premises as shown on the above Map No. 2350,' i.e., the small right-of-way.

"In a warranty deed filed with the Norwalk land records on August 1, 1995, Sally Bochner and Jane Cogie, successor owners of 6 Styles Lane, conveyed those premises to defendant Candido Valadares, refer-

ring to Map No. 2350 for a full description of the property. Once again, Bochner and Cogie were successors in interest of the original grantees of the rights-of-way. The conveyance purported to be 'Together with a right of way for all lawful purposes in, through, over and upon a small portion of the property of [Hermine] Peterson, bounding the above described premises [on the] southeast thereof and more particularly designated as "Right of way" on the aforesaid map, in common with [Hermine] Peterson, her heirs and assigns and together with an easement of way, leading [from] Styles Lane to the southerly line of the first mentioned, "Right of way" herein, in common with [Hermine] Peterson, her heirs and assigns. Reference to said map is hereby made and had for a more particular description and location of said premises on the rights of way above mentioned.' Accordingly, Bochner and Cogie were not *granting* a right-of-way to [the defendant] in the language of the deed, but rather conveying to him whatever rights of way they had previously acquired, the dimensions (but not the nature) of which were reflected in Map 2350.

"After purchasing his property, [the defendant] commenced activities on both the large right-of-way and the small right-of-way that [the plaintiff] objected to. Prior to 1995, the large right-of-way had been bordered by trees and vegetation, and used solely as a driveway. But [the defendant] removed trees, bushes and vegetation, created and used parking areas, and stored firewood on the sides of the driveway on the large right-of-way. He also built a wall with pillars, which narrowed the Styles Lane entrance to the large right-of-way.

"Prior to 1995, the eastern portion of the small right-of-way had been undisturbed, containing trees and vegetation. [The defendant] removed trees and vegetation from the eastern side of the small right-of-way, which historically had not been used for travel. The trees and vegetation did not interfere with its normal use. Over

time, he unnecessarily expanded the use of the eastern side for travel and turnaround purposes, disturbed a sign [the plaintiff] had placed to indicate which was his residence and removed or destroyed boundary markers or fences installed by [the plaintiff] defining his property line. [The defendant] also created a parking space on a neighbor's property, using a portion of the right-of-way to get to it.

"When it became known to both parties that ownership of the large right-of-way was in question, [the plaintiff] commenced proceedings in Norwalk Probate Court to have the apparent record owner of the large right-of-way declared dead and to have a contract for the purchase of the large right-of-way approved by the Probate Court. [The defendant] objected, and the property was put up for sale by sealed bid, with the plaintiff and the defendant [being] the only bidders. [The plaintiff] was the successful bidder and obtain[ed] a deed.

"After [the plaintiff] became the title owner of the large right-of-way, he placed logs along the side of the driveway. [The defendant] removed objects placed by [the plaintiff] along the driveway to prevent parking. Finally, when snowplowing, [the defendant] removed some gravel." (Emphasis in original.)

The plaintiff commenced the present action against the defendant and requested that the court, inter alia, enjoin the defendant from performing any act utilizing the right-of-way[2] for any purpose other than ingress

[2] Although the referee's report describes the driveway as two sections ("the large right-of-way" and "the small right-of-way"), there is no need to employ this distinction in this opinion, because the plaintiff is now the owner in fee of the entire servient estate over which both sections pass, and there is no claim by the plaintiff that the two sections should be treated differently for the purposes of this appeal. Therefore, we will describe both sections collectively as either "the right-of-way" when analyzing the defendant's rights or simply "the driveway" when analyzing the plaintiff's rights and duties.

and egress. The defendant's counterclaim contained no particular claims for relief. The matter was submitted to a referee who, after hearing the evidence and viewing the disputed property, found the facts previously set forth and reached certain conclusions of law. The court rendered judgment in accordance with the referee's report, from which the plaintiff appeals. The defendant did not cross appeal.

We begin our analysis of the plaintiff's claims by setting forth our standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 53, 607 A.2d 424 (1992). We must also bear in mind the fact that the referee visited the disputed property. "A view of the subject matter in dispute may be taken by the court, in the exercise of a sound discretion, whenever it is necessary or important to a clearer understanding of the issues. . . . Information obtained through a visual observation of the locus in quo is just as much evidence as any other evidence in the case. . . . Evidence obtained by visual inspection is not subject to appellate review. . . . Conclusions based on such evidence are entitled to great weight on appeal . . . and are subject to review only for clear error." (Citations omitted; internal quotation marks omitted.) *Castonguay* v. *Plourde,* 46 Conn. App. 251, 262, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997).

The plaintiff's first claim relates to the creation of a passing area in the right-of-way.[3] The plaintiff argues

---

[3] The referee's conclusions of law at paragraph 7. c. of his report states: "One passing area, in a location to be agreed upon by the parties within

that the referee's conclusion was without legal authority. The plaintiff cites *Wilson* v. *DeGenaro*, 36 Conn. Sup. 200, 415 A.2d 1334 (1979), aff'd, 181 Conn. 480, 435 A.2d 1021 (1980), for the proposition that where a definite right-of-way exists, a court cannot give a party more than that party is entitled to receive. *Wilson* is inapposite, as are other similar cases dealing with the interpretation of a right-of-way granted in a deed, because the language of the original, pre-1946 deed that created the right-of-way was not presented in evidence by the plaintiff to the referee. In fact, the plaintiff apparently relied exclusively on later conveyances in the chain of title containing references to the "map of property prepared for [Hermine] Peterson" dated 1946. The best indication that we have of the location of the right-of-way is contained in the "map of property prepared for [Hermine] Peterson," which states that the right-of-way was "granted in deed Vol. 169-88, Norwalk Land Records." Beyond this reference, though, we have no indication of what is contained in that deed. By failing to offer any evidence of the metes and bounds of the right-of-way as set by that deed, "the plaintiff acted at his peril that the court would not make the more specific findings that he desired." *Kelley* v. *Tomas*, 66 Conn. App. 146, 167 n.4, 783 A.2d 1226 (2001).

The referee was faced with a situation in which the parties agreed that a right-of-way existed across the plaintiff's property as shown on the "map of property prepared for [Hermine] Peterson," but the parties did not agree to the extent of the usage the defendant might make of the right-of-way. Absent any evidence of the language of the deed creating the right-of-way, the ref-

thirty days, and approximately half way up the large right-of-way, should be created. It shall be eighteen feet wide and twenty-five feet long so that it will allow two passenger-sized vehicles to pass each other. If the parties cannot agree upon the location of the area within thirty days, the matter may be referred back to me for such determination."

eree correctly relied upon *Pudim* v. *Moses*, 20 Conn. Sup. 311, 134 A.2d 478 (1957), for the proposition that when an easement is not specifically defined, "the rule is that the easement be only such as is reasonably necessary and convenient for the purpose for which it was created." Id., 313. In his analysis, the referee considered *Strollo* v. *Iannantuoni*, 53 Conn. App. 658, 734 A.2d 144, cert. denied, 250 Conn. 924, 738 A.2d 662 (1999). In *Strollo*, this court stated that "[t]he use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit. . . . The decision as to what would constitute a reasonable use of a right-of-way is for the trier of fact whose decision may not be overturned unless it is clearly erroneous." (Citation omitted; internal quotation marks omitted.) Id., 660–61.

The plaintiff did not ask the referee to interpret the language of the deed granting the right-of-way. In the absence of the deed, the plaintiff was asking the referee to make a factual determination as to what would constitute a reasonable use of the right-of-way. As such, we cannot overturn the court's decision unless, based on the record, we conclude that the decision was clearly erroneous. See *Somers* v. *LeVasseur*, 230 Conn. 560, 564, 645 A.2d 993 (1994). The plaintiff, however, did not provide a transcript of the testimony before the referee to either the trial court or this court. We are also not in a position to review the referee's visual inspection of the disputed property.[4] See *Castonguay* v. *Plourde*, supra, 46 Conn. App. 262. The only indication of the testimony presented at trial is the referee's findings of fact. On the basis of those findings, we cannot conclude that the court's decision, as to the necessity of a passing area, was clearly erroneous.

[4] We are able to review the photographs of the right-of-way that are part of the record. In the absence of testimony explaining the location and perspective of the pictures, though, these photographs provide little assistance in determining whether a passing area was necessary.

The plaintiff also challenges the portion of the referee's report that allows the defendant to make repairs or improvements.[5] The plaintiff asserts that there was no evidence of any existing improvements and that the referee did not precisely limit the improvements the defendant was allowed to make.[6] We disagree with both assertions. As to the first assertion, the referee's report included the finding that "when snowplowing, [the defendant] removed some gravel." In addition, one or both of the parties entered photographs as evidence of the condition of the right-of-way. These photographs show a gravel driveway, not a dirt driveway without any improvements as the plaintiff's argument suggests. The plaintiff's second assertion, that the referee did not limit the improvements that the defendant may make,

[5] Paragraph 7. g. of the referee's conclusions of law states: "The driveway and the allowed portion of the small right-of-way, although passable, are in need of some repair and may be graded to even them out. The question is who should pay for it. 'The law is settled that the obligation of the owner of the servient estate, as regards the easement, is not to maintain it, but to refrain from doing or suffering something to be done which results in an impairment of it.' Kelly v. Ivler, 187 Conn. 31, 45, 450 A.2d 817 (1982). The defendant claims the improvements should be paid for jointly, but the plaintiff is perfectly happy with the current state of affairs. Under the circumstances, since the driveway is still passable, if the defendant wants to improve it, that expense should not be forced upon the plaintiff, and the defendant should pay for the improvements. Likewise, the defendant may additionally, at his expense, install 3/4" traprock spread to a depth of 2.5" for the length of the right-of-way. See Kuras v. Kope, 205 Conn. 332, 346, 533 A.2d 1202 (1987)."

[6] The plaintiff, in his reply brief, raises two issues that he did not raise in his initial brief to this court: (1) whether the referee's finding that the right-of-way was "passable" should prevent the defendant from making improvements; and (2) whether there is a legally significant distinction between "improvements" and "maintenance." The plaintiff, however, failed to raise these issues in his initial brief. "It is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) Willow Springs Condominium Assn., Inc. v. Seventh BRT Development Corp., 245 Conn. 1, 48 n.42, 717 A.2d 77 (1998). Therefore, we will not determine whether grading and installing traprock on the right-of-way are improvements or merely repairs. Merely for the sake of convenience, we refer to the work the defendant may do as "improvements."

is also unsupported by the record. The referee's report clearly describes two improvements the defendant may make: installing traprock to a depth of 2.5 inches and grading the right-of-way. The remainder of the referee's conclusions enjoined the defendant from engaging in any activity on the right-of-way beyond using it for ingress and egress to his property and making the improvements previously set forth.[7]

The third claim is the plaintiff's challenge to that portion of the referee's report restricting the plaintiff from removing vegetation near the right-of-way. The referee, in his conclusions of law, stated: "Neither party may remove vegetation, shrubbery, weeds, vines or trees except to the extent they are within the nine to eleven foot right-of-way. . . ." In adopting the referee's report, the court made this a part of its judgment. In analyzing the plaintiff's third claim, we must address a jurisdictional issue raised by the referee's conclusion.

We note that even though the issue of jurisdiction was not argued by either party, a court has the authority to consider this issue sua sponte. "[Our Supreme Court] has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . [T]he court has

---

[7] Paragraph 7. a. of the referee's conclusions of law states: "The defendant should be enjoined from engaging in any activity on the large right-of-way beyond using it for ingress and egress to his property and further enjoined from any activity interfering with any activity of the plaintiff on the [large right-of-way] which does not affect the defendant's use of the driveway for ingress and egress to his property. He should be enjoined from using the easterly portion of the small right-of-way and from interfering with the plaintiff's sign."

Furthermore, paragraph 7. e. of the referee's conclusions of law states: "The plaintiff may restrict the defendant's access from the right-of-way to parking areas not located within the right-of-way. The purpose of the right-of-way was for ingress and egress *to the defendant's residence* and not to facilitate his parking on other people's property." (Emphasis in original.)

a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Moreover, [t]he parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent." (Citations omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002).

"The determination of whether subject matter jurisdiction exists is a question of law and, thus, our review is plenary." *Hultman* v. *Blumenthal*, 67 Conn. App. 613, 615, 787 A.2d 666, cert. denied, 259 Conn. 929, 793 A.2d 253 (2002). "Jurisdiction is the power in a court to hear and determine the cause of action presented to it. . . . To constitute this there are three essentials: first, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and third, the point decided must be, in substance and effect, within the issue." (Citation omitted; internal quotation marks omitted.) *Lobsenz* v. *Davidoff*, 182 Conn. 111, 116, 438 A.2d 21 (1980). We note that the defendant in his counterclaim did not request that the referee impose this restriction upon the plaintiff. Apparently, the issue of whether the plaintiff should be restricted from removing vegetation on his property was never raised in the pleadings.[8] For that reason, we must reverse the trial court's decision as to that part of the referee's report because the court lacked jurisdiction as to this issue.[9]

[8] The defendant pleaded in paragraph 3. B. of his counterclaim that the plaintiff had "attempted to prevent the defendant from removing natural and manmade obstacles from the rights-of-way." The defendant, however, never sought to prevent the plaintiff from removing vegetation or other natural obstacles on or near the right-of-way.

[9] The defendant states that he has no objection to the plaintiff's removing vegetation. We note that the plaintiff is the owner in fee of the servient estate over which the defendant has a right-of-way. The referee restricted the plaintiff from removing vegetation on his property for no reason that we can discern from the record. There was no finding that would suggest that this restriction upon the plaintiff was necessary to prevent him from interfering with the defendant's use of the right-of-way. The rights and duties of the plaintiff as owner of the servient estate are clear: "The law is settled

The plaintiff's final claim pertains to the allocation of maintenance costs of the right-of-way. The referee's report states in pertinent part: "The cost of removing any obstructions or materials not in accordance with this opinion should be borne by the parties that placed them. Thereafter, since both parties use the driveway, any routine maintenance of the right-of-way in its current state, as modified by this decision, should be shared equally between the parties, or their respective heirs, successors and assigns." The plaintiff cites *Center Drive-In Theatre, Inc.* v. *Derby*, 166 Conn. 460, 352 A.2d 304 (1974), which sets forth the general rule that "[w]here the instrument is silent, the owner of an easement has a duty to make such repairs as are necessary for the owner of the land to have the reasonable use of his estate." Id., 464. This general rule, however, has been applied to situations where the easement benefits only the dominant estate. See, e.g., id., 460 (city owning easement for pipeline under servient estate); *Powers* v. *Grenier Construction, Inc.*, 10 Conn. App. 556, 524 A.2d 667 (1987) (holding owner of easement for drainage purposes liable for flooding caused by failure to repair). We must now determine whether this rule applies with equal force in a situation such as the present one where both the dominant and the servient estates derive the same benefit from the common use of a driveway. We conclude that it does not.

The plaintiff only recently became the owner of the servient estate over which the common driveway passes. Prior to the plaintiff's purchasing the servient estate, he had an easement over the disputed driveway just as the defendant did. At that time, the general rule set forth in *Center Drive-In Theatre, Inc.* v. *Derby*,

---

that the obligation of the owner of the servient estate, as regards an easement, is not to maintain it, but to refrain from doing or suffering something to be done which results in an impairment of it." (Internal quotation marks omitted.) *Kelly* v. *Ivler*, 187 Conn. 31, 45, 450 A.2d 817 (1982).

supra, 166 Conn. 464, would have required both the plaintiff and the defendant to contribute jointly to the costs for repair and maintenance of the right-of-way that served both their parcels. The former owner of the servient estate, not using the property for the purpose authorized by the easement, was under no obligation to contribute to the maintenance of the right-of-way. *Kelly* v. *Ivler*, 187 Conn. 31, 45, 450 A.2d 817 (1982). When the plaintiff became the owner in fee of the servient estate, his easement was extinguished by merger; see *Blanchard* v. *Maxson*, 84 Conn. 429, 434, 80 A. 206 (1911); but he continued to use the driveway as the means of ingress and egress to his house. The referee reasonably determined that both the plaintiff and the defendant used the driveway. If the defendant did not have the easement over the driveway, the plaintiff would bear the full cost of repairs and maintenance himself. We cannot conclude that the defendant should be required to subsidize the plaintiff's use of his own property. It is appropriate that both parties contribute to the maintenance of the driveway because both parties contribute to the wear on the driveway. We conclude that the proper rule is, absent language in a deed to the contrary, "[j]oint use by the servient owner and the servitude beneficiary . . . of the servient estate for the purpose authorized by the easement . . . gives rise to an obligation to contribute jointly to the costs reasonably incurred for repair and maintenance of the portion of the servient estate . . . used in common." 1 Restatement (Third), Property, Servitudes § 4.13 (3), pp. 631–32 (2000). This was the result reached by the court, and, so, we affirm that portion of the judgment requiring the plaintiff and the defendant to share the costs of routine maintenance.

The judgment is reversed in part and the case is remanded with direction to render judgment as on file

except as modified to eliminate the restriction on the plaintiff from removing vegetation on his property.

In this opinion the other judges concurred.