ACE EQUIPMENT SALES, INC. *v.* H.O. PENN
MACHINERY COMPANY, INC.
(AC 25230)

Foti, Flynn and Bishop, Js.

Argued November 30, 2004—officially released May 3, 2005

*Kirk D. Tavtigian, Jr.,* for the appellant (plaintiff).

*Alan S. Dambrov,* for the appellee (defendant).

*Opinion*

FLYNN, J. In this contract action, the plaintiff, Ace Equipment Sales, Inc., a Connecticut corporation, appeals from the judgment of the trial court denying it relief. On appeal, the plaintiff claims that the court acted improperly by holding (1) that it did not take title free and clear of the security interest held by the defendant, H.O. Penn Machinery Company, Inc., pursuant to General Statutes (Rev. to 1997) § 42a-9-307 and (2) that the plaintiff was not entitled to restitution from the defendant.[1] We affirm the judgment of the trial court.

The record and a joint stipulation the parties submitted to the trial court reveal the following facts and procedural history. In May, 1996, the defendant, a New York corporation, entered into conditional sales contracts for the sale of, among other pieces of construction equipment, a Cedar Rapids Crushing Plant Model 1313 (crusher) to the buyer, Pace Equipment Corporation (Pace), a Massachusetts corporation. The defendant had recorded financing statements and held a valid and perfected security interest in the crusher and proceeds from the sale thereof.

In July, 1997, the plaintiff entered into a contract with Pace for the sale of the crusher for $175,000 with the defendant's authorization, knowledge and consent. The plaintiff paid that amount to Pace on that date. At the time of the sale, the plaintiff did not have actual knowledge of the defendant's security interest. The crusher was located on the property of a third party. In March, 1998, representatives of the plaintiff went to retrieve the

---

[1] The plaintiff also claims that the court acted improperly by holding that pursuant to General Statutes (Rev. to 1997) § 42a-9-306 (2), the plaintiff did not take title free and clear of the defendant's security interest. Because we conclude that the plaintiff took title free and clear of the defendant's security interest, pursuant to General Statutes (Rev. to 1997) § 42a-9-307, we need not address the plaintiff's claim regarding subsection (2) of § 42a-9-306.

crusher and observed stickers on the crusher stating: "Property of H.O. Penn." When the representatives of the plaintiff had inspected the crusher prior to purchasing it, there were no stickers or other indicia on the crusher to indicate that the defendant had a security interest in the crusher. The defendant refused to release the crusher to the plaintiff unless it paid an additional $175,000 to the defendant for the crusher. The plaintiff had agreed to lease the crusher to a customer and did not want to default on that commitment. Therefore, the plaintiff entered into a contract under which it paid to the defendants the sum of $175,000 in return for the defendant's releasing the crusher to the plaintiff.

The plaintiff thereafter brought an action against the defendant seeking reformation, rescission, cancellation or termination of the contract and seeking breach of contract damages, other damages and restitution against the defendant. In March, 2002, ruling from the bench, the court denied the plaintiff any relief and held that there was no basis on which it would be entitled to recovery. After an articulation requested by the plaintiff, the court charged the plaintiff with having had constructive notice of the security interest and held that, pursuant to General Statutes (Rev. to 1997) §§ 42a-9-306 and 42a-9-307, the plaintiff did not take title from Pace free and clear of the defendant's security interest. This appeal followed. Additional facts will be set forth as necessary.

At the outset, we set forth our standard of review. "Because the parties have stipulated to the relevant facts, our review is plenary and we must determine whether the trial court's conclusions of law are legally and logically correct and find support in the stipulated facts." (Internal quotation marks omitted.) *Snyder* v. *Seldin*, 81 Conn. App. 718, 722, 841 A.2d 701 (2004).

I

The plaintiff claims that the court improperly determined that it did not take title to the crusher free and clear of the defendant's security interest pursuant to subsection (1) of § 42a-9-307. Specifically, the plaintiff contends that it was a buyer in the ordinary course of business. We agree.

General Statutes (Rev. to 1997) § 42a-9-307 (1) provides in relevant part: "(1) A buyer in ordinary course of business as defined by subsection (9) of section 42a-1-201 . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." According to General Statutes (Rev. to 1997) § 42a-1-201 (9): " 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . ." We first look to whether the plaintiff was a buyer in the ordinary course of business. "This definition requires, inter alia, that the buyer in ordinary course buy from a seller who ordinarily sells similar goods." *Aircraft Trading & Services, Inc.* v. *Braniff, Inc.*, 819 F.2d 1227, 1232 (2d Cir.), cert. denied sub nom. *Condren* v. *Aircraft Trading & Services, Inc.*, 484 U.S. 856, 108 S. Ct. 163, 98 L. Ed. 2d 118 (1987). According to the stipulated facts, as of the date of the contract between the plaintiff and Pace, the plaintiff was in the business of purchasing, selling and leasing construction equipment. Pace acted as a broker for the sale of used construction equipment and a dealer for the sale of used construction equipment that Pace itself owned. Pace owned the crusher at the time of the sale to the plaintiff and was a dealer in that transaction. The fact that Pace was engaged, at least in part, in the business of being a broker does not preclude a

finding that it was in the business of selling goods of the kind. See *American National Bank & Trust Co.* v. *Mar-K-Z Motors & Leasing Co.*, 57 Ill. 2d 29, 32–33, 309 N.E.2d 567 (1974) (evidence that automobile leasing firm had on occasion sold automobiles sufficient to support finding that leasing firm was in business of selling goods of the kind within meaning of subsection [9] of § 1-201 of the Uniform Commercial Code [UCC]); *Sea Harvest, Inc.* v. *Rig & Crane Equipment Corp.*, 181 N.J. Super. 41, 436 A.2d 553 (1981) (in interpreting New Jersey statute similar to § 42a-1-201 [9], court held that corporation in business of leasing cranes that also, as substantial part of business, sold cranes was buyer in ordinary course of business for purposes of subsection [1] of § 9-307).

To qualify as a buyer in the ordinary course of business under § 42a-1-201 (9) and § 42a-9-307 (1), the plaintiff must also act in good faith and without knowledge that the sale violates the rights of another person in the goods.

"Knowledge," as defined in General Statutes (Rev. to 1997) § 42a-1-201 (25), requires actual knowledge, as distinguished from mere constructive notice. The stipulated facts do not indicate that the plaintiff acted with knowledge that the sale violated the defendant's rights. Rather, the stipulated facts indicate that at the time of the sale, the plaintiff had no actual knowledge of the defendant's security interest in the crusher. Therefore, it could not have had actual knowledge that the sale violated another person's rights in the crusher. The plaintiff was not required to conduct a title search for liens in order to qualify as a buyer in the ordinary course of business for purposes of § 42a-1-201 (9) and § 42a-9-307 (1). See 9 R. Anderson, Uniform Commercial Code (3d Ed. Rev. 1999) § 9-307:9; see also *European-American Bank & Trust Co.* v. *Sheriff of County of Nassau*, 97 Misc. 2d 549, 411 N.Y.S.2d 851 (1978) (buyer lacked

actual knowledge of security in goods, and it was not incumbent on buyer to search for any possible security interests in order to qualify under UCC § 9-307).

" 'Good faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing." General Statutes § 42a-3-103 (a) (4). There is no indication in the stipulated facts that the plaintiff acted without good faith. Contrary to the defendant's contention, the fact that Pace did not have possession of the crusher at the time of the sale was not evidence of bad faith by the plaintiff, nor did it deprive the plaintiff of the status of a buyer in the ordinary course of business. "To buy in the ordinary course requires that the sale be consistent with the usual and customary practices in the kind of business in which the seller is engaged or with the seller's own usual and customary practices." 9 R. Anderson, supra, § 9-307:10; see General Statutes § 42a-1-201 (9).

The stipulation of facts states that it is customary in the industry for a dealer not to have physical possession of equipment that it owns and offers for sale due to the prohibitive cost of transporting heavy construction equipment. Likewise, it is also irrelevant that the plaintiff did not take immediate possession of the crusher. As stated in the stipulation, according to customs in the industry, Ace would not take physical possession of the crusher until it had a customer for it because of the prohibitive expense of transporting the crusher. A buyer in the ordinary course of business is protected under § 42a-9-307 (1) without regard to whether the goods have been delivered. See generally *Chrysler Credit Corp.* v. *Sharp*, 56 Misc. 2d 261, 288 N.Y.S.2d 525 (1968); see also *Finance America Commercial Corp.* v. *Econo Coach, Inc.*, 118 Ill. App. 3d 385, 388–89, 454 N.E.2d 1127 (1983) (whether transaction accords with customs in industry is critical in determining buyer in

ordinary course of business status, not delivery of goods, for purposes of subsection [1] of UCC § 9-307); *Holstein* v. *Greenwich Yacht Sales, Inc.,* 122 R.I. 211, 215, 404 A.2d 842 (1979) (delivery not required for buyer to take free of secured party's security interest under Rhode Island equivalent of subsection [1] of UCC § 9-307).

Because the plaintiff was a buyer in ordinary course of business, as defined by § 42a-1-201 (9), it took the crusher free of the defendant's security interest even though the security interest was perfected.

## II

That does not end our analysis, however. The defendant contends that the plaintiff waived any claims it may have had against the defendant when the parties entered into the contract. We agree.

"Waiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy." (Citations omitted; internal quotation marks omitted.) *Gagne* v. *Vaccaro,* 80 Conn. App. 436, 445–46, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004). "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Citation omitted; internal quotation marks omitted.) *Hensley* v. *Commissioner of Transportation,* 211 Conn. 173, 179, 558 A.2d 971 (1989).

Waiver may be implied from the circumstances. The plaintiff's acts and conduct indicate that it had knowledge of its right to the crusher. The stipulated facts state that the contract with the defendant was made on or about March 12, 1998, and that subsequent to March 9, 1998, the plaintiff made inquiry of the defendant concerning the status of the crusher and first learned of the defendant's security interest in the crusher at that time. The stipulated facts do not state whether the plaintiff discovered the defendant's security interest prior to or subsequent to entering into the contract with the defendant. The stipulation includes acts and conduct of the plaintiff from which waiver may be implied. Pace represented to the plaintiff that it owned the crusher and that it was offering the crusher for sale with the defendant's authorization, knowledge and consent. Representatives of the plaintiff inspected the crusher prior to purchase and noticed a lack of stickers or other indicia on it indicating that the defendant had a security interest in the crusher. After paying Pace, the plaintiff went to retrieve the crusher and observed stickers attached to the crusher stating: "Property of H.O. Penn."

When the plaintiff entered into an agreement with the defendant, it relinquished its right to make a claim against the defendant regarding the crusher. "[Waiver] involves the idea of assent, and assent is an act of understanding." (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, supra, 80 Conn. App. 445. The plaintiff knew, on the basis of the contract between the parties, that it was paying the defendant additional moneys to obtain a release of the crusher from the defendant. The plaintiff could have refused to pay the defendant and sued the defendant at that point. The plaintiff did not have to enter into this agreement, but made a voluntary economic decision to do so.

The plaintiff argues that it did not voluntarily waive its rights, but that it entered into the contract under duress. On the basis on the stipulation of facts, we do not agree that this is a case of duress. "For a party to demonstrate duress, it must prove [1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim. . . . The wrongful conduct at issue could take virtually any form, but must induce a fearful state of mind in the other party, which makes it impossible for [the party] to exercise his own free will. . . . Where a party insists on a contractual provision or a payment that he honestly believes he is entitled to receive, unless that belief is without any reasonable basis, his conduct is not wrongful and does not constitute duress or coercion under Connecticut law . . . ." (Internal quotation marks omitted.) *Traystman, Coric & Keramidas* v. *Daigle*, 84 Conn. App. 843, 846, 855 A.2d 996 (2004).

We cannot agree with the claim of duress, first because the stipulated facts do not indicate that the defendant's refusal to release the crusher induced a fearful state of mind in the plaintiff that made it impossible for the plaintiff to exercise its free will. The plaintiff did not have to enter into the agreement, but chose to do so for economic reasons. Furthermore, the plaintiff had reasonable alternatives. It could have posted bond and sought a prejudgment remedy such as replevin. Although time constraints were involved, as the plaintiff needed the crusher because it had agreed to lease it to a customer, the stipulated facts do not show that the plaintiff needed the crusher in such a time frame as to make replevin or other court action impractical or to jeopardize the plaintiff's sale to a third party.

Additionally, the plaintiff has not proven that the resulting transaction was unfair. Although the plaintiff paid $175,000 twice in order to obtain the crusher, there

is no showing in the stipulation of facts as to the true value of the crusher or the fair amount of the defendant's lien allocable to the crusher. Thus, there is no evidence of an unconscionable windfall to the defendant as a result of the contract to satisfy the requirements of *Traystman, Coric & Keramidas* under the unfairness prong of the test for duress. See id.

The crux of the waiver analysis lies in the plaintiff's four year delay in bringing suit, long after the plaintiff had paid the defendant the disputed sum, obtained the crusher and sold it to its customer after any alleged economic duress had ceased to exist. The fact that the plaintiff waited four years after entering into the contract to bring suit against the defendant points toward a voluntary relinquishment of a known right and lack of economic duress. We turn to persuasive authority from other jurisdictions, which reveals that "the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so. . . . If the releasing party does not promptly repudiate the contract or release, he will be deemed to have ratified it. A party may ratify a contract or release entered into under duress by intentionally accepting benefits under the contract, by remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it, or by acting upon it, performing under it, or affirmatively acknowledging it." (Citations omitted; internal quotation marks omitted.) *VKK Corp.* v. *National Football League*, 244 F.3d 114, 122–23 (2d Cir. 2001); *Anselmo* v. *Manufacturers Life Ins. Co.*, 771 F.2d 417, 420 (8th Cir. 1985) (" 'A party, who is entitled to avoid a contract on the ground of duress should repudiate it promptly after the duress has been removed. Silence and acquiescence for a considerable period thereafter, action in accord with it, and acceptance of benefits under it, amount to a ratification.' ").

One who seeks to disaffirm a contract because of his claims that he was forced to enter into it due to economic duress must do so with reasonable promptness once the duress has ceased. See *VKK Corp.* v. *National Football League,* supra, 244 F.3d 122–23. Delays ranging from six months to two years have been found to constitute waiver. See *DiRose* v. *PK Management Corp.,* 691 F.2d 628, 633–34 (2d Cir. 1982), cert. denied, 461 U.S. 915, 103 S. Ct. 1896, 77 L. Ed. 2d 285 (1983). Here, the plaintiffs waited four years to bring suit. By performing under the contract and "remaining silent" for four years after performing under the contract, the plaintiff waived its right to now claim that the contract was entered into under economic duress. For this reason, and because the plaintiff has not met the four-pronged test for duress; see *Traystman, Coric & Keramidas* v. *Daigle,* supra, 84 Conn. App. 846; we conclude that waiver has occurred.

The judgment is affirmed.

In this opinion the other judges concurred.