# HATHEWAY FARMS ASSOCIATION, INC., ET AL.
## *v.* HATHEWAY FARMS OF SUFFIELD, LLC, ET AL.
## (AC 33131)

Beach, Bear and Bishop, Js.

1

2

Argued February 6—officially released April 24, 2012

*Michael D. O'Connell*, with whom, on the brief, were *Robert B. Flynn* and *Steven J. Zakrzewski*, for the appellant (named plaintiff).

*Mark S. Shipman*, with whom was *Sarah Black Lingenheld*, for the appellee (defendant Alamin Family Partnership).

*Gerald L. Garlick*, with whom was *J. Thomas Johnson*, for the appellee (plaintiff Rockville Bank).

*Opinion*

BEAR, J. The plaintiff Hatheway Farms Association, Inc. (Association), appeals from the judgment of the trial court, rendered in favor of the plaintiff Rockville Bank and the defendant Alamin Family Partnership

(Alamin),[1] holding that the defendants are not responsible for the costs of maintenance and capital improvements to the shared portion of Gideon Way, a private road.[2] On appeal, the Association claims that the trial court erred in holding that (1) the plain language of the property deeds excused the defendants from any obligation to contribute to the expenses for the upkeep of the shared portion of Gideon Way and (2) only upon satisfaction of a condition precedent would the obligation of Rockville Bank and Alamin to contribute to the expenses of the shared portion of Gideon Way have been triggered. We affirm the judgment of the trial court.

The following facts inform our analysis. In 1989, Laureno Enterprises owned a 14.6 acre parcel of land on the south side of Mountain Road in Suffield, on which it planned to develop a commercial office park. In March, 1990, Suffield approved the subdivision plan filed by Laureno Enterprises. Laureno Enterprises sold the first subdivided parcel (bank parcel) of the planned commercial office park to New England Bank & Trust Company (New England Bank) via a warranty deed (bank deed). The bank deed provides in relevant part:

"1. Grantor [Laureno Enterprises] contemplates the creation of an office park development on other premises owned by [Laureno Enterprises] and situated westerly, southerly and easterly of the premises herein

---

[1] Unless otherwise necessary, for purposes of this appeal, we refer to Rockville Bank, although a plaintiff, and Alamin jointly as the defendants, and individually by name.

[2] Elzear Roy and Hatheway Farms of Suffield, LLC, also were defendants in this action. They, however, are not parties to this appeal. The trial court bifurcated the trial of this matter; in the first phase of the trial, the court determined whether Rockville Bank or Alamin had an obligation to contribute to the maintenance and repair of Gideon Way. We note that, although the Association's claims against Roy and Hatheway Farms of Suffield, LLC, were pending in the trial court at the time the appeal was filed, the Association's appeal is taken from a final judgment because the judgment from which it appeals disposed of all causes of action involving Rockville Bank and Alamin. The action subsequently was withdrawn against Roy and Hatheway Farms of Suffield, LLC, in December, 2011.

conveyed . . . . [Laureno Enterprises] expects to create a '[p]lanned [c]ommunity' as the same is defined and described under the Common Interest Ownership Act [General Statutes § 47-200 et seq.]. Provided Grantee [New England Bank] has reviewed and approved the [d]eclaration of the [p]lanned [c]ommunity including the method of allocation of the [c]ommon [e]xpenses, which approval shall not be unreasonably withheld, [New England Bank] agrees to join with [Laureno Enterprises] in submitting the premises herein conveyed, together with the other premises owned by [Laureno Enterprises], to the provision of such [d]eclaration, thereby causing the premises herein conveyed to become a [u]nit in the [p]lanned [c]ommunity. . . .

"4. [New England Bank] shall be responsible for the cleaning, the removal of ice and snow, the maintenance and repair of the [p]arking [a]rea and the access road hereinabove described until such time as [New England Bank] no longer has the exclusive right to use said premises. . . ."[3]

In 1996, Laureno Enterprises conveyed a second subdivided parcel (Finlay parcel) to Finlay Properties, Inc. (Finlay), by warranty deed (Finlay deed). The Finlay deed refers to the bank parcel as "existing lot one," and it describes the Finlay parcel in reference to a resubdivision plan dated March, 1996. The resubdivision plan shows the New England Bank parking area and identifies the shared portion of Gideon Way as the "exist[ing] driveway." The Finlay deed includes a "right of way in common with others for all purposes for which public highways are ordinarily used . . . over [p]roposed [a]ccess [e]asement in [f]avor of [l]ot 2 and [e]xist[ing] [d]riveway as shown on [the March, 1996

---

[3] In paragraph 4 of the bank deed the term "said premises" reasonably can be read to include the designated parking area for the bank and the access road instead of the property demised to the bank.

resubdivision] map." (Internal quotation marks omitted.) The Finlay deed also provides a covenant by Finlay "to be responsible for the cleaning, the removal of snow and ice, and the maintenance and repair of [the] [p]roposed [a]ccess [e]asement in [f]avor of [l]ot 2 as shown on [the March, 1996 resubdivision] map." (Internal quotation marks omitted.) The deed further provides: "[Laureno Enterprises] . . . anticipates the eventual development of [premises situated southerly and southwesterly of the Finlay parcel] and as a part of such development, may desire to create a '[p]lanned [c]ommunity' as the same [is] defined and described under the Common Interest Ownership Act of the [s]tate of Connecticut. In such event it would be anticipated that the [Finlay] premises . . . would become a [u]nit in the [p]lanned [c]ommunity. Provided [Finlay] has reviewed and approved the [d]eclaration of the [p]lanned [c]ommunity, including the method of allocation of common expenses, which approval shall not be unreasonably withheld, [Finlay] agrees to join with [Laureno Enterprises] in submitting the premises herein conveyed, together with other premises owned by [Laureno Enterprises] or previously conveyed by [Laureno Enterprises], to the provision of such [d]eclaration thereby causing the premises herein conveyed to become a [u]nit in the [p]lanned [c]ommunity." In 1997, Finlay conveyed this parcel to Alamin (Alamin parcel) by means of a warranty deed (Alamin deed).

Subsequently, New England Bank merged with Webster Bank, and, on March 27, 2001, Webster Bank conveyed the bank parcel to Rockville Bank by quitclaim deed.

On December 21, 2001, Laureno Enterprises sold the remainder of its Mountain Road property to Briarwood Homes, Inc., by warranty deed. This property includes the land on which Gideon Way is located. In July, 2003, Briarwood Homes, Inc., conveyed its interest in this

property to Hatheway Farms of Suffield, LLC, by quit-claim deed; and Hatheway Farms of Suffield, LLC, developed Hatheway Farms as a residential common interest community pursuant to a July 31, 2003 declaration that also transferred the property to the Association.

The residents of and visitors to Hatheway Farms access the homes in this common interest community by a public highway, Mountain Road, which provides direct access to Gideon Way and to Hatheway Drive, a private cul de sac. Both Rockville Bank and Alamin own access easements over Gideon Way.

In their amended complaint, the Association and Rockville Bank sought, in relevant part, a declaration as to whether Rockville Bank or Alamin had an obligation to contribute to the maintenance and repair costs of that portion of Gideon Way that runs from Mountain Road to the easternmost curb of Hatheway Drive (the shared roadway). Alamin acknowledges that, pursuant to the covenant set forth in its warranty deed, it solely is responsible to repair and maintain the portion of Gideon Way that extends past the easternmost curb of Hatheway Drive. Accordingly, it is the maintenance and repair of the shared roadway that is at issue in this case. After the parties agreed to a bifurcated trial, this issue was considered on the basis of the parties' stipulation of facts and exhibits, and the court determined that Rockville Bank and Alamin have no obligation to contribute to the costs of maintaining and repairing the shared roadway. This appeal followed.

Initially, we set forth our standard of review. When the decision of the trial court is based on stipulated facts and exhibits, our review of the decision is plenary. See *Doucette* v. *Pomes*, 247 Conn. 442, 453, 724 A.2d 481 (1999); *Ace Equipment Sales, Inc.* v. *H.O. Penn Machinery Co.*, 88 Conn. App. 687, 690, 871 A.2d 402,

cert. denied, 274 Conn. 909, 876 A.2d 1200 (2005). We must determine whether the court's conclusions of law are legally and logically correct and are supported by the stipulated facts and exhibits. See *Doucette* v. *Pomes*, supra, 453; *Ace Equipment Sales, Inc.* v. *H.O. Penn Machinery Co.*, supra, 690. Additionally, when we construe an easement created by deed, "[w]e look to the intent [of the parties] as expressed in the deed, considering all of its relevant provisions and reading it in the light of the surrounding circumstances. . . . We give the language of the easement its ordinary import when nothing in the situation or surrounding circumstances indicates a contrary intent. . . . Although in most contexts the issue of intent is a factual question over which our scope of review is limited, the construction of a deed, considered in the light of all the surrounding circumstances, presents a question of law over which we exercise plenary review." (Citations omitted.) *Zhang* v. *Omnipoint Communications Enterprises, Inc.*, 272 Conn. 627, 634, 866 A.2d 588 (2005). With these principles in mind, we turn to the Association's claims.

On appeal, the Association claims that the court erred in ruling, pursuant to the clear language of the deeds, that neither Rockville Bank nor Alamin has any obligation to contribute to the costs of maintaining and repairing the shared roadway. The Association argues, citing to *Beneduci* v. *Valadares*, 73 Conn. App. 795, 812 A.2d 41 (2002), that our case law clearly supports the notion that Rockville Bank and Alamin, as beneficiaries of the easement over the shared roadway, both have a duty to contribute to the costs associated with that roadway. The Association also argues that the Alamin deed and the bank deed are silent as to the obligation of maintenance and repair in the present situation, and, therefore, the common-law obligation of joint beneficiaries of an easement is applicable and requires that all

beneficiaries contribute to the costs of maintaining and repairing the shared roadway. We disagree.

The parties agree on the rule of law that "[u]nless the terms of a servitude . . . provide otherwise . . . [t]he beneficiary of an easement . . . has a duty to the holder of the servient estate to repair and maintain the portions of the servient estate . . . that are under the beneficiary's control, to the extent necessary to (a) prevent unreasonable interference with the enjoyment of the servient estate . . . ." (Internal quotation marks omitted.) *Schwartz* v. *Murphy*, 74 Conn. App. 286, 297 n.7, 812 A.2d 87 (2002), cert. denied, 263 Conn. 908, 819 A.2d 841 (2003), cert. denied, 546 U.S. 820, 126 S. Ct. 352, 163 L. Ed. 2d 61 (2005), quoting 1 Restatement (Third), Property, Servitudes § 4.13 (1), p. 631 (2000); *Powers* v. *Grenier Construction, Inc.*, 10 Conn. App. 556, 560, 524 A.2d 667 (1987) ("[t]he duty of maintaining an easement so that it can perform its intended function rests on the owner of the easement absent any contrary agreement"). However, "absent language in a deed to the contrary, [j]oint use by the servient owner and the servitude beneficiary . . . of the servient estate for the purpose authorized by the easement . . . gives rise to an obligation to contribute jointly to the costs reasonably incurred for repair and maintenance of the portion of the servient estate . . . used in common." (Internal quotation marks omitted.) *Beneduci* v. *Valadares*, supra, 73 Conn. App. 808, quoting in part 1 Restatement (Third), supra, § 4.13 (3), pp. 631–32.

The parties disagree, however, on whether the language in the deeds negates the common-law duty of Rockville Bank and Alamin to contribute to the costs of maintaining and repairing the shared roadway. The Association argues that the court erred in concluding that the plain language of the deeds relieved the defendants of this obligation. It argues that "[t]here is no

language in either deed that is contrary to the proposition that the parties should share the [shared roadway] [e]xpenses." We disagree.

## I

## THE BANK DEED

The relevant portions of the bank deed provide: "1. . . . [Laureno Enterprises] expects to create a '[p]lanned [c]ommunity' . . . . Provided [New England Bank] has reviewed and approved the [d]eclaration of the [p]lanned [c]ommunity including the method of allocation of the [c]ommon [e]xpenses, which approval shall not be unreasonably withheld, [New England Bank] agrees to join with [Laureno Enterprises] in submitting the premises herein conveyed, together with the other premises owned by [Laureno Enterprises], to the provisions of such [d]eclaration, thereby causing the premises herein conveyed to become a [u]nit in the [p]lanned [c]ommunity. . . . 4. [Rockville Bank] shall be responsible for the cleaning, the removal of ice and snow, the maintenance and repair of the [p]arking [a]rea and the access road hereinabove described until such time as [Rockville Bank] no longer has the exclusive right to use said premises."[4]

The Association argues that "[t]he bank deed assigned sole responsibility for maintenance of the easement to the bank, but only for as long as the bank was the exclusive user. . . . The deed . . . does not contain any language that governs responsibility for maintenance when the bank is no longer the exclusive user of [the shared roadway]." It further argues that, because the deed is silent as to the responsibility for maintenance now that Rockville Bank no longer is the exclusive user, Rockville Bank, necessarily, by operation of the common law, is jointly obligated to contribute to the maintenance costs now that others are using the shared roadway. We disagree.

---

[4] See footnote 3 of this opinion.

After our review of the bank deed, we agree with the trial court that paragraphs one and four specifically address the condition that must occur before Rockville Bank becomes responsible for costs in common with other users, namely, it must become a member unit in a commercial planned community, and all parties agree that Rockville Bank is not a member unit of a commercial planned community.

"A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . Whether the performance of a certain act by a party to a contract is a condition precedent to the duty of the other party to act depends on the intent of the parties as expressed in the contract and read in light of the circumstances surrounding the execution of the instrument." (Citation omitted; internal quotation marks omitted.) *Pullman, Comley, Bradley & Reeves* v. *Tuck-it-Away, Bridgeport, Inc.*, 28 Conn. App. 460, 467–68, 611 A.2d 435, cert. denied, 223 Conn. 926, 614 A.2d 825 (1992). Whether a contract or a deed contains an unfulfilled condition precedent, based on the terms of the agreement and the parties' intent, can be a mixed question of fact and law or simply a question of law. See *K. A. Thompson Electric Co.* v. *Wesco, Inc.*, 27 Conn. App. 120, 126 n.2, 604 A.2d 828 (1992) ("In this case, whether the contract contained an unfulfilled precedent, based on the terms of the agreement and the parties' intent, was a mixed question of fact and law. In *D'Addario* v. *D'Addario*, 26 Conn. App. 795, 603 A.2d 1199 (1992), whether a deed contained a condition precedent was a question of law."). Here, we conclude that the question of the existence of a condition precedent is one of law.

Paragraph one of the bank deed states that Laureno Enterprises contemplates the creation of a commercial planned community, that Rockville Bank agrees to a reasonable review and approval of the declaration of

the planned community and the method of allocating the common expenses, that the bank parcel will become a unit in the planned community and that Rockville Bank agrees to join with Laureno Enterprises in submitting the bank parcel and the other parcels to the provisions of the declaration. Paragraph four states that Rockville Bank solely was responsible for the costs associated with the repair and maintenance of the shared roadway for as long as Rockville Bank was the exclusive user of the shared roadway.

A key portion of paragraphs one and four is Rockville Bank's ability to review and approve the declaration and the method of allocating the common expenses of the commercial planned community. Presently, Rockville Bank, a commercial enterprise, is not a member of the Association, a residential planned community; therefore, it did not review and approve the declaration of the residential planned community, nor did it review and approve the method of allocating common expenses among the members of that community. Pursuant to the plain language of the deed, however, before Rockville Bank becomes responsible for a portion of the common expenses, a commercial planned community must be created, of which Rockville Bank has the responsibility to become a unit member after reviewing and approving the declaration and the method of allocating common expenses among the unit members of that commercial planned community. Under the present state of affairs, the Association seeks to hold Rockville Bank responsible for a share of the common expenses without Rockville Bank having had the benefit of being a unit member in the community with the right to review and approve the declaration and the method of allocating the expenses of that community. We agree with the trial court that this is not what was contemplated by the bank deed.[5]

---

[5] We also find it noteworthy that the trial court found that "there [was] no evidence . . . indicating that during the period of more than ten years

## II

## THE ALAMIN DEED

The relevant portions of the Alamin deed provide that (1) Alamin has a "right of way in common with others for all purposes for which public highways are ordinarily used . . . over [p]roposed [a]ccess [e]asement in [f]avor of [l]ot 2 and [e]xist[ing] [d]riveway [i.e., the shared roadway] as shown on [the March, 1996 resubdivision] map" (2) "[Alamin] . . . agrees to be responsible for the cleaning, the removal of snow and ice, and the maintenance and repair of those premises shown as '[p]roposed [a]ccess [e]asement in [f]avor of [l]ot 2' as shown on the [March, 1996 resubdivision] map" and (3) "Laureno Enterprises . . . anticipates the eventual development of [premises situated southerly and southwesterly of the Alamin property] and [that it] . . . may desire to create a '[p]lanned [c]ommunity' . . . . In such event it would be anticipated that the [Alamin] premises . . . would become a [u]nit in the [p]lanned [c]ommunity. Provided [Alamin] has reviewed and approved the [d]eclaration of the [p]lanned [c]ommunity, including the method of allocation of common expenses, which approval shall not be unreasonably withheld, [Alamin] agrees to join with Laureno Enterprises in submitting the premises herein conveyed, together with other premises owned by Laureno Enterprises or previously conveyed by Laureno Enterprises, to the provision of such [d]eclaration thereby causing the premises herein conveyed to become a [u]nit in the [p]lanned [c]ommunity."

The Association argues that the "Alamin [d]eed does not contain any language governing maintenance and

between the granting of the [Alamin deed] and the commencement of this lawsuit, that Laureno [Enterprises] ever sought any contribution from [New England Bank], Rockville Bank, Finlay or Alamin toward the costs of maintaining [the shared roadway]."

expenses for [the shared roadway] used by both [Rockville] Bank and Alamin . . . . The rule requires contribution to expenses unless *contrary language* appears in the [d]eed. In other words, it requires language in the [d]eed whereby the grantor *expressly waived* its right to seek contribution from the easement holder. No such language appears in the Alamin [d]eed. Thus, Alamin, like [Rockville] Bank, is responsible for a portion of the maintenance expenses." (Emphasis in original.) We are not persuaded.

We agree that pursuant to the clear language of the deed, Alamin is responsible for the maintenance and repair of the access easement shown on the 1996 resubdivision map. This access easement, as stipulated by the parties, concerns only the area of Gideon Way that extends past the easternmost curb of Hatheway Drive. As with the bank deed, the Association argues that the Alamin deed is silent as to Alamin's obligation to share the cost of maintaining and repairing the shared roadway. We conclude, however, that the trial court correctly determined that before Alamin becomes responsible for costs associated with the shared roadway, it must become a member unit in a planned community. As with Rockville Bank, all parties agree that Alamin has not become a member unit of a planned community.

The Alamin deed states that Alamin solely is responsible for the costs associated with the upkeep of the area of Gideon Way that extends past the easternmost curb of Hatheway Drive. The deed also states, however, that Laureno Enterprises anticipates the creation of a planned community, that subject to Alamin's review and approval of the declaration of the planned community and the method of allocating the common expenses, Alamin will become a unit in the planned

community and that it will join with Laureno Enterprises in submitting the Alamin parcel and the other parcels to the provisions of the declaration.

Similar to our analysis of the bank deed, we conclude that of key importance is Alamin's ability to review and approve the declaration and the method of allocating the common expenses of the planned community before becoming responsible for a share of the common expenses. See *Pullman, Comley, Bradley & Reeves* v. *Tuck-it-Away, Bridgeport, Inc.*, supra, 28 Conn. App. 467–68 (condition precedent must take place before duty to perform implicated). In the present case, Alamin had no right to review and approve the declaration of the residential planned community, nor did it have the right to review and approve the method of allocating common expenses among the unit members of that community. Furthermore, the parties agree that Alamin is not a unit member of the residential planned community. The plain language of the Alamin deed, however, establishes that before Alamin becomes responsible for a portion of the common expenses, a planned community, presumably a commercial planned community if Alamin is to be a unit member, must be created. In the creation of the planned community, Alamin must become a unit member after it reviews and approves the declaration and the method of allocating common expenses among the unit members. In the current situation, as with Rockville Bank, the Association seeks to hold Alamin responsible for a share of the common expenses without Alamin being a unit member in the planned community and without Alamin having had the right to review and approve the declaration of the planned community and the method of allocating common expenses. We agree with the trial court that before Alamin is responsible for a portion of the cost of maintaining and repairing the shared roadway, pursuant to

its deed, it must be a unit member of a planned community with the right to approve the declaration and the method of allocating the common expenses.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] See footnote 3 of this opinion.